THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Starr Gadson, by her Guardian ad Litem Kathy
Gadson,        Respondent,
 
 
 

v.

 
 
 
ECO Services of South Carolina, Inc. and Joseph Jenkins,       
Appellants.
 
 
 

Appeal From Jasper County
Paul M. Burch, Circuit Court Judge

Unpublished Opinion No. 2005-UP-130
Heard January 12, 2005  Filed February 
 18, 2005

AFFIRMED IN PART AND REVERSED IN 
 PART

 
 
 
Deborah H. Sheffield, of Charleston, for Primary Appellant.
Joseph R. Weston, of Mt. Pleasant, for Secondary Appellant.
Daniel E. Henderson, of Ridgeland, for Respondent.
 
 
 

PER CURIAM:  ECO Services of South Carolina, 
 Inc. (ECO) and Joseph Jenkins, appeal from jury verdicts against them on Starr 
 Gadsons claims for negligent entrustment.  We affirm as to Jenkins and reverse 
 as to ECO.  
FACTS
Jenkins worked for ECO, solid waste contractor 
 that services Beaufort, Jasper, and Hampton counties.  As a helper, Jenkins 
 used ECOs trucks to go back for missed pickups.  On August 6, 1997, Jenkins 
 failed to return ECOs truck at then end of the day to the Hilton Head office.  
 Instead, he drove the truck to Hardeeville.  Gadson testified that she saw Jenkins 
 drive the truck to a friends house.  Jenkinss cousin John Jenkins was riding 
 in the front of the truck and Gadsons brother and another passenger were riding 
 in the back.  Gadsons brother climbed out of the truck and went home. Gadson 
 and several other people climbed into the back of the truck and Jenkins drove 
 them to McDonalds.  After they ate, Jenkins drove them to a store where John 
 bought a cigar and one or two wine coolers, which he shared with another passenger.  
 Jenkins then drove them to the Purrysburg Landing, where they talked for about 
 an hour.  
When the group started back to Hardeeville, John 
 was driving the truck. [1]   He suddenly sped up to around 
 80 miles per hour and then lost control of the vehicle, resulting in the accident.  
 Gadson and the other passengers in the back were thrown from the truck.  
Gadson, along with others injured in the accident, 
 brought suit alleging negligence and negligent entrustment against ECO, Jenkins, 
 and John. [2]   The case was tried to a jury.  
 ECO and Jenkins were represented at trial, but Jenkins did not appear.  John 
 was not represented and did not appear at trial.  The jury returned a general 
 verdict against all three defendants.  The jury found, in special interrogatories, 
 as follows:  (1)ECO entrusted its vehicle to Jenkins; (2) ECO was negligent 
 in entrusting its vehicle to Jenkins; (3) ECOs negligence proximately caused 
 the plaintiffs injuries; (4) John was the driver of the vehicle; (5) Johns 
 negligence proximately caused the plaintiffs injuries; (6) Jenkins was not 
 the driver of the vehicle; and (7) Jenkins was negligent in entrusting the vehicle 
 to John.  It awarded Gadson $50,000 in actual damages.  
ECO and Jenkins both requested and were granted 
 ten days to file post-trial motions.  In their motions, ECO and Jenkins asked 
 for JNOV and new trial based on alleged juror misconduct. [3]   The trial court initially dismissed both motions 
 finding they were untimely.  On remand from this court, the trial court considered 
 both motions on the merits, but denied them.  ECO and Jenkins appealed.  
STANDARD OF REVIEW
When reviewing the denial of a motion 
 for a directed verdict or JNOV, this court uses the same standard as the trial 
 court by viewing the evidence and all reasonable inferences in the light most 
 favorable to the nonmoving party.  Welch v. Epstein, 342 S.C. 279, 299, 
 536 S.E.2d 408, 418 (Ct. App. 2000).  The motion must be denied when the evidence 
 is susceptible of more than one inference.  Id. at 300, 536 S.E.2d at 
 418.  Neither this court nor the trial court has authority to decide credibility 
 issues or to resolve conflicts in the testimony or evidence.  Id. 
LAW/ANALYSIS
ECO and Jenkins both argue the 
 trial court erred in denying their motions for directed verdict and JNOV on 
 Gadsons claims for negligent entrustment.  
The theory of negligent 
 entrustment provides:  the owner or one in control of the vehicle and responsible 
 for its use who is negligent in entrusting it to another can be held liable 
 for such negligent entrustment. Am. Mut. Fire Ins. Co. v. Passmore, 
 275 S.C. 618, 622, 274 S.E.2d 416, 418 (1981) (quoting 19 A.L.R.3d 1175, 1192).  

The Restatement (Second) 
 of Torts § 308 (1965) [4] , provides 
 as follows:

It is negligence to permit a third 
 person to use a thing or to engage in an activity which is under the control 
 of the actor, if the actor knows or should know that such person intends or 
 is likely to use the thing or to conduct himself in the activity in such a manner 
 as to create an unreasonable risk of harm to others.

We will consider Gadsons claims 
 against ECO first.  
It is undisputed that ECO owned 
 the truck involved in the accident.  ECO does dispute that Jenkins had authority 
 to be driving the truck on the night of the accident.  Lou Joseph Diaz, general 
 manager for ECO, testified that Jenkins had never taken the truck to Hardeeville 
 after work hours prior to the date of the accident.  However, one of the other 
 passengers injured in the truck contradicted this testimony when he said that 
 he had seen Ricky driving the truck around Hardeeville in the evenings for a 
 week before the accident.  
Jenkins was suspended twice early 
 in 1997 for unexcused absences from work.  Additionally, a note in Jenkinss 
 personnel file indicated that Jenkins was terminated for unauthorized use of 
 a company vehicle on July 11, 1997three weeks before the accident occurred.  
 When confronted, Diaz testified that the date on the note was probably a typographical 
 error by the personnel office in Charleston.  He further testified that the 
 note was probably intended to reflect that Jenkins was fired on August 7, 1997 
 as a result of the accident, and that Jenkins had not been disciplined in July 
 of 1997.  Diaz noted that this could be confirmed by the personnel office; however, 
 the ECO employee who inserted the note into the file was never called to testify.  
 Hector Calderon, human resource director at ECO, testified that ECO never fired 
 Jenkins in July of 1997.  He stated ECOs payroll records showed Jenkins was 
 working for the company during that time.  We agree with ECO that the only reasonable 
 conclusion is that the notation that Jenkins was terminated on July 11, 1997 
 is a typographical error.  See Hopson v. Clary, 321 S.C. 312, 
 314, 468 S.E.2d 305, 307 (Ct. App. 1996) (stating that although we are bound 
 to review the record in a light most favorable to respondents, we cannot ignore 
 facts unfavorable to that party.)  However, even if we accept the notation 
 as evidence ECO had previously terminated Jenkins for unauthorized use of a 
 vehicle, we find the record does not support the jurys finding of negligent 
 entrustment against ECO.
Gadson asserts that the evidence 
 proves ECO knew that Jenkins was an irresponsible employee, and therefore was 
 likely to cause harm to third parties with the truck.  We disagree.  The crux 
 of the issue is whether ECO knew or should have known that Jenkins intended 
 or was likely to use the truck in such a manner as to create an unreasonable 
 risk of harm to others.  The only inference from the evidence in the record 
 is that Jenkins had attendance problems at work about six months before the 
 accident, and that he was known to take ECOs trucks home without authorization.  
 Jenkinss driving record contained no violations, accidents, or suspensions 
 over the three-year period prior to the accident.  There is simply no evidence 
 that ECO knew that Jenkins was likely to drive the truck recklessly, or that 
 ECO knew that Jenkins was likely to entrust the truck to someone else who would 
 drive it recklessly.
Gadson attempts to close this 
 gap by using negative inferences from the fact that Jenkins did not testify 
 at the trial.  See Duckworth v. First Natl Bank, 254 S.C. 563, 
 576, 176 S.E.2d 297, 304 (1970) (If a party knows of an available witness on 
 a material issue and such witness is within his control and if without satisfactory 
 explanation he fails to call him, the jury may draw the inference that the testimony 
 of the witness would not have been favorable to such party.)  However, this 
 rule is not applicable here because Jenkins was no longer an employee of ECO 
 at the time of trial and thus was no longer under ECOs control.  Id. 
 at 576-77, 176 S.E.2d at 304.  
The test for legal sufficiency 
 of the evidence in South Carolina is whether the evidence serves to prove a 
 fact or permits an inference of fact that would enable an ordinarily intelligent 
 mind to draw a rational conclusion therefrom in support of the right of the 
 plaintiff to recover.  Mahaffey v. Ahl, 264 S.C. 241, 248, 214 S.E.2d 
 119, 122 (1975).  We find insufficient evidence to support the knowledge prong 
 of Gadsons negligent entrustment claim against ECO.  The evidence presented 
 is simply not enough to permit an ordinarily intelligent mind to rationally 
 infer that ECO knew that Jenkins was likely to entrust the vehicle to another 
 who would drive recklessly.  Accordingly, we find the trial court erred in denying 
 ECOs motions for directed verdict and JNOV.  
Jenkins liability for negligently 
 entrusting the truck to John is a separate issue.  Jenkins did not dispute that 
 he had control of the vehicle, or that he entrusted the vehicle to John.  Additionally, 
 Jenkins has not disputed that this entrustment was unauthorized.  We find the 
 record supports the inference that Jenkins knew or should have known that Johns 
 use of the vehicle was likely to cause harm.  Jenkins knew that John had been 
 drinking alcoholic beverages.  Jenkins was apparently familiar with Johns character, 
 because he was Johns cousin.  Moreover, because Jenkins did not testify on 
 his own behalf, the jury was permitted to infer that any testimony would have 
 been unfavorable.  See McCowan v. Southerland, 253 S.C. 9, 12, 168 S.E. 
 573, 574 (1969) (stating that as to facts that were peculiarly within defendants 
 knowledge, the defendants unexplained failure to testify raises an inference 
 that his testimony, if it had been submitted, would have been unfavorable to 
 his position).  Accordingly, we find the trial court did not err in denying 
 Jenkinss motions for directed verdict and JNOV.  
CONCLUSION
Based on the foregoing, the order of the 
 trial court is
 AFFIRMED in part, and REVERSED in part. 
 HUFF, KITTREDGE, and BEATTY, JJ., concur.

 
 
 [1] The official accident investigation report listed Jenkins as the 
 driver of the truck, but the jury by special interrogatory found the driver 
 at the time of the accident to be John.

 
 
 [2] The other cases have been settled and are no longer a part of this 
 appeal.  In addition, John did not appeal the judgment against him.  

 
 
 [3] After the trial, Jenkins attorney spoke to one of the jurors and 
 discovered that several of the jurors either knew of Jenkins and John or knew 
 of their reputations.  Additionally, one of the jurors had a cousin who worked 
 for ECO.  The attorney prepared an affidavit testifying to what he heard.  
 

 
 
 [4] In Lydia v. Horton, 343 S.C. 376, 540 S.E.2d 102 (Ct. App. 
 2000), this court adopted the Restatement (Second) of Torts §§ 308 and 390 
 as the standard for negligent entrustment in South Carolina.  Lydia 
 involved a first party cause of action for negligent entrustment.  The South 
 Carolina Supreme Court reversed this courts opinion, holding that the plaintiff 
 could not recover on a first party negligent entrustment cause of action because 
 (1) South Carolinas modified comparative negligence scheme would bar recovery 
 for this type of claim, and (2) the public policy considerations addressed 
 . . . in Tobias v. Sports Club, Inc., 332 S.C. 90, 504 S.E.2d 318 (1998).  
 Lydia v. Horton, 355 S.C. 36, 39, 583 S.E.2d 750, 752 (2003).  The 
 supreme court also decline[d] to adopt sections 308 and 390 of the Restatement 
 based on the facts of that case.  Id. at 43, 583 S.E.2d at 754.  We 
 do not find the supreme courts ruling in Lydia would prevent application 
 of section 308 of the Restatement under the facts of the present case as the 
 question addressed in Lydia was whether South Carolina recognizes a 
 first party negligent entrustment claim.