583 S.E.2d 750

**Mitchell LYDIA, Respondent,**

v.

**Steve C. HORTON, Petitioner.**

**Lisa Mullinax Lydia, Respondent,**

v.

**Steve C. Horton, Petitioner.**

**No. 25675.**

Supreme Court of South Carolina.

Heard Dec. 4, 2002.

Decided July 14, 2003.

Samuel W. Outten, John Patrick Riordan, both of Leatherwood Walker Todd & Mann, of Greenville, for Petitioner.

Andrew C. Barr, of Fulton & Barr, of Greenville, for Respondent.

Chief Justice TOAL.

We granted certiorari to review the Court of Appeals' determination that Petitioner is liable on a first party negligent entrustment claim because he allowed an intoxicated person to borrow his car.

### Factual/Procedural Background

According to the Complaint, Respondent, Mitchell Lydia ("Lydia"), was intoxicated on April 27, 1995, when Petitioner, Steve Horton ("Horton"), allowed Lydia to borrow his car. Lydia's Complaint alleges that Horton either knew or should have known that Lydia was not competent to operate the vehicle. Lydia then drove the car in his intoxicated state and wrecked the vehicle in a single-car accident that rendered him a quadriplegic.

Lydia brought an action against Horton for first party negligent entrustment. The trial court granted Horton's motion for judgment on the pleadings holding that Lydia's admitted negligence precluded any recovery on his part because, under South Carolina's modified comparative negligence system, his negligence outweighed Horton's negligence. The Court of Appeals reversed and remanded, holding that a first

party negligence claim can be brought in this state. *Lydia v. Horton,* 343 S.C. 376, 540 S.E.2d 102 (Ct.App.2000).

This Court granted Horton's petition for certiorari to review the Court of Appeals decision. Horton raises the following issue on appeal:

> Did the Court of Appeals err in recognizing a first party negligent entrustment cause of action brought by an adult who was intoxicated when injured?

## Law/Analysis

Horton argues that the Court of Appeals erred in adopting a first party negligent entrustment cause of action asserted by an intoxicated party. We agree.

Whether South Carolina recognizes a first party negligent entrustment claim is a novel question of law. In finding that this state should recognize the cause of action, the Court of Appeals adopted the Restatement (Second) of Torts §§ 308 and 390 (1965).

Section 308 provides:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Section 390 provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

We conclude that the policy considerations which support the legal theory of third party negligent entrustment are undermined by applying them to a first party cause of action. The

Restatement provides seven illustrations of when a negligent entrustment claim arises. Only one illustration, Illustration 7, refers to a first party claim, and we do not believe that a pure first party claim can be extrapolated from the illustration.[1] The example involves a lessee/lessor relationship where a third-party is injured, which is not analogous to the facts of this case.

We hold that Lydia cannot recover on a first party negligent entrustment cause of action for two reasons: (1) South Carolina's modified comparative negligence scheme would bar recovery for this type of claim, and (2) public policy considerations addressed by this Court in *Tobias v. Sports Club, Inc.*, 332 S.C. 90, 504 S.E.2d 318 (1998).

---

1. The Restatement provides the following illustrations:

1. A gives a loaded gun to B, a feeble-minded girl of ten, to be carried by her to C. While B is carrying the gun she tampers with the trigger and discharges it, harming C. A is subject to liability to C.
2. A permits B, a boy of ten, who has never previously driven a motor car, to drive his motor car on an errand of B's own. B drives the car carelessly, to the injury of C. A is subject to liability to C.
3. A permits B, his chauffeur, who to his knowledge is in the habit of driving at an excessive speed, to use his car to take B's family to the seashore. While driving the car for this purpose, B drives at an excessive rate of speed and harms C. A is subject to liability to C.
4. A lends his car to his friend B for B to use to drive a party of friends to a country club dance. A knows that B has habitually become intoxicated at such dances. On the particular occasion B becomes intoxicated and while in that condition recklessly drives the car into the carefully driven car of C, and causes harm to him. A is subject to liability to C.
5. A rents an automobile to B, a young man who announces his purpose to drive it from Boston to New York on a bet that he will do so in three hours. A is subject to liability if the excessive speed at which the car is driven causes harm to travelers on the highway.
6. A sells or gives an automobile to B, his adult son, knowing that B is an epileptic, but that B nevertheless intends to drive the car. While B is driving he suffers an epileptic seizure, loses control of the car, and injures C. A is subject to liability to C.
7. A, who makes a business of letting out boats for hire, rents his boat to B and C, who are obviously so intoxicated as to make it likely that they will mismanage the boat so as to capsize it or to collide with other boats. B and C by their drunken mismanagement collide with the boat of D, upsetting both boats. B, C, and D are drowned. A is subject to liability to the estates of B, C, and D under the death statute, although the estates of B and C may also be liable for the death of D.

## Modified Comparative Negligence System

 In South Carolina, a plaintiff is barred from recovery if his negligence outweighs the defendant's. *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991). We believe that this state's modified comparative negligence system also bars an intoxicated adult's recovery on a first party negligent entrustment cause of action. We cannot imagine how one could be more than fifty percent negligent in loaning his car to an intoxicated adult who subsequently injured himself.[2] We agree with the trial judge that Lydia's admission that he was "appreciably impaired" and that he lost control of the vehicle supports only one conclusion, that Lydia's negligence exceeded Horton's. *See Creech v. South Carolina Wildlife & Marine Resources Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997) (if the evidence supports only one conclusion, then the comparative fault of the plaintiff and defendant becomes a question of law for the trial judge).

---

**2.** Comment C to section 390 explains the interplay between the theory of negligent entrustment and the contributory and comparative negligence defenses:

> c. The rule stated in this Section sets out the conditions under which a supplier of a chattel is subject to liability. As always this phrase denotes that a supplier is liable if, but only if, his conduct is the legal cause of the bodily harm complained of *and if the person suffering the harm is not subject to any defense such as contributory negligence,* which will prevent him from recovering damages therefore. One who accepts and uses a chattel knowing that he is incompetent to use it safely or who associates himself in the use of a chattel by one whom he knows to be so incompetent, or one who is himself careless in the use of the chattel after receiving it, *is usually in such contributory fault as to bar recovery.* If, however, the person to whom the chattel is supplied is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions, the supplier may be liable for harm suffered by him, as when a loaded gun is entrusted to a child of tender years. So too, if the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm sustained by the incompetent although such person deals with it in a way which may render him liable to third persons who are also injured.

(emphasis added). While the analysis in Comment C is consistent with our position that Lydia's first party negligent entrustment claim is barred since his comparative fault outweighed Horton's, we decline to adopt the Comment or sections 308 and 390 of the Restatement based on these facts presented.

## Public Policy

Even in a situation where comparative negligence would not bar a claim for negligent entrustment, South Carolina's public policy prohibits a first party negligent entrustment action under this factual scenario. The public policy considerations which govern our decision as to whether to allow civil suits based on negligent entrustment grow out of South Carolina's regulation of the sale of alcohol.

South Carolina first criminalized the sale of alcohol to an intoxicated person in 1874. The state had no statutorily or judicially imposed civil liability. Nationally, in this era, many states were adopting "dram shop laws," imposing civil liability on tavern owners for injuries caused by intoxicated patrons to whom the tavern owner had sold alcohol. Meanwhile, in 1909, South Carolina enacted total prohibition, 10 years before federal Prohibition was adopted. The federal Prohibition amendment was repealed in 1933. Although alcohol sales were also legalized in South Carolina in 1933, this state did not permit full-blown sale of liquor by the drink until 1973.[3] Nationally, after Prohibition ended, many states with a more developed system of legalized bars began to repeal their dram shop laws.[4]

At common law in American courts, a tavern owner could not be held civilly liable for injuries caused by an over served, intoxicated patron. With the repeal of dram shop laws in all but 18 states, the majority of states did not impose liability upon tavern owners.[5] In the 1950s, several state supreme courts began to develop a theory of tavern owner civil liability based on violations of state criminal statutes forbidding the serving of alcohol to intoxicated patrons.[6]

---

**3.** 1973 S.C. Act No. 122.

**4.** The history of the development of the law in this area nationally and in South Carolina is detailed in S.A. O'Connor's comprehensive and well written student note, *Last Call: The South Carolina Supreme Court Turns Out the Lights on First–Party Plaintiff's Causes of Action Against Tavern Owners*, 50 S.C.L.Rev. 1095 (Summer 1999). This article is the source of the Court's review of the development of tavern owner's liability.

**5.** O'Connor, *Last Call*, 50 S.C.L.Rev. 1095, 1098.

**6.** *See, e.g., Waynick v. Chicago's Last Department Store*, 269 F.2d 322 (7th. Cir.1959).

By 1987, 41 states had some form of tavern liability.[7] South Carolina's General Assembly did not enact a dram shop law, but in 1985, the South Carolina Court of Appeals held that a bar owner's violation of the criminal statute forbidding service to intoxicated persons could support a civil suit against the bar for injuries caused by the intoxicated patron. *Christiansen v. Campbell*, 285 S.C. 164, 328 S.E.2d 351 (Ct.App.1985). In *Christiansen*, the plaintiff was struck by an automobile as he stepped off the curb in front of a bar where he had consumed a number of beers. The bar owner had continued to serve Christiansen after he became intoxicated. Christiansen sued the automobile driver and the bar owner. The Court of Appeals held that Christiansen had a private right of action against the bar owner based on the violation of a penal statute. The Court of Appeals found that the statute existed both to protect the public and to protect intoxicated persons. *Id.*

In *Tobias v. Sports Club, Inc.*, 332 S.C. 90, 504 S.E.2d 318 (1998), this Court expressly overruled *Christiansen* holding that we would not permit an intoxicated adult to bring a first party cause of action against a tavern proprietor predicated on a violation of the dram shop statutes. This Court stated, "public policy is not served by allowing the intoxicated adult patron to maintain a suit for injuries which result from his own conduct." *Id.* at 90, 504 S.E.2d at 320. Our Court noted that its decision did not preclude a third party from bringing a cause of action under the statutes. *Id.* at 90, 504 S.E.2d at 319.

We apply these same public policy considerations to this case. We disagree with the Court of Appeals' conclusion that *Tobias* public policy considerations only have bearing in comparing fault but have no bearing on whether or not to impose an outright bar to a first party negligent entrustment cause of action. The essence of this case and the *Tobias* case are the same, for in both cases, the plaintiff, who was voluntarily intoxicated when the accident occurred, is attempting to deflect the responsibility that should be imposed upon himself towards another. Just as this plaintiff cannot bring a first party cause of action to challenge the discretionary conduct of

---

7. O'Connor, *supra* n. 3, at 1100 (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 310 (Tex.1987)).

the tavern owner, he cannot bring the same action to challenge the discretionary conduct of his entrustor.

## Conclusion

We **REVERSE** the Court of Appeals and conclude that Lydia's first party negligent entrustment claim is barred because his negligence outweighed Horton's and because of the public policy considerations we set forth in *Tobias*. We also decline to adopt sections 308 and 390 of the Restatement based on this set of facts.

MOORE and WALLER, JJ., concur.

PLEICONES, J., concurring in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES.

I concur in the result reached by the majority, but would ground the decision solely in public policy. I write separately because I am not willing to hold, as the majority does, that in all events the fault of the entrustor is outweighed by the fault of the intoxicated adult. I would hold only that public policy precludes a voluntarily intoxicated adult from bringing such a first party negligent entrustment action.

BURNETT, J., concurs.