No. 106,429

JERRY L. MARTELL, as Conservator for KIM "TRAVIS" DRISCOLL, *Appellants*, v. SANDRA DRISCOLL, *Defendant*, LEROY DRISCOLL, *Appellee,* BECKY MULLINS, and DOROTHY MCHARDIE, *Defendants.*

(302 P.3d 375)

Opinion filed June 7, 2013.

*Edward C. Gillette*, of Gillette Law Firm, P.A., of Mission, argued the cause, and *Kyle A. Branson*, of the same firm, was with him on the briefs for appellants.

*Brette Suzanne Hart*, of Harris McCausland, P.C., of Kansas City, Missouri, argued the cause, and *Dana M. Harris*, of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: According to the amended petition Jerry L. Martell, as conservator for Kim "Travis" Driscoll (collectively referred to as "Driscoll"), filed against Leroy Driscoll (Leroy) and other named defendants, Leroy allowed Driscoll to drive a car belonging to Leroy and others, knowing that Driscoll was incapable of safely driving the car. Driscoll subsequently got into a car accident with another vehicle, which resulted in injuries to Driscoll. Driscoll later

filed a negligent entrustment claim against Leroy and the other presumptive owners of the vehicle, claiming that they owed him a duty to not give control of the vehicle to him. After filing an answer, Leroy filed a motion to dismiss Driscoll's petition for failure to state a claim, arguing, among other things, that Kansas law does not recognize a first-party negligent entrustment claim. The district court granted Leroy's motion to dismiss. After the district court certified its decision as a final judgment under K.S.A. 2011 Supp. 60-254(b), Driscoll brought this appeal. This court acquired jurisdiction over the appeal after granting Driscoll's motion to transfer the appeal from the Court of Appeals. See Supreme Court Rule 8.02 (2012 Kan. Ct. R. Annot. 71). For reasons stated below, we reverse the district court's decision and remand for further proceedings.

## FACTS

The amended petition Driscoll filed in this case alleges that on November 2, 2008, Driscoll was involved in a car accident in Jefferson County after he failed to yield the right-of-way to another vehicle while attempting to turn south onto U.S. Highway 59. As a result of this accident, Driscoll sustained serious injuries.

At the time of the accident, the car Driscoll was driving was titled in Leroy's name. Leroy also maintained insurance for the vehicle. Driscoll alleged that Leroy had permitted him to use the car despite being aware that Driscoll's driver's license was suspended, Driscoll had a past history of alcohol abuse and drank alcohol on a daily or nearly daily basis, he had received multiple DUIs, and he was a known reckless or incompetent person incapable of safely operating the vehicle.

In August 2010, Driscoll filed a lawsuit in Leavenworth County District Court against Leroy, Sandra Driscoll, and Becky Mullins, claiming that all three of them had a superior or exclusive right to control the vehicle and that they had negligently entrusted the vehicle to Driscoll. Within the same lawsuit, Driscoll also filed a negligence claim against Dorothy McHardie, the driver of the other vehicle involved in the accident. The case was subsequently transferred to the Jefferson County District Court.

Leroy filed an answer to the petition, generally denying the facts supporting the negligent entrustment claim and contending that the petition failed to state a valid claim of negligent entrustment because Driscoll was not an innocent third party but the alleged entrustee of the car. Leroy subsequently filed a motion to dismiss the negligent entrustment claim, arguing that Kansas law does not recognize a first-party negligent entrustment claim. Leroy also argued that regardless of whether such a claim was valid in Kansas, Kansas' modified comparative fault system would bar recovery in this case because Driscoll, based on the facts alleged in his petition, was at least 50 percent at fault for the accident. Finally, Leroy argued that Kansas public policy, as evidenced in *Mills v. City of Overland Park*, 251 Kan. 434, 837 P.2d 370 (1992) (Kansas law does not provide a cause of action against a supplier of alcohol for the alcohol-related death of a minor patron), and *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985) (Kansas law does not provide a cause of action against the suppliers of alcohol for persons injured as a result of the torts of intoxicated patrons, even underage patrons), bars a first-party negligent entrustment claim against a person who entrusted a vehicle to an individual who voluntarily, but negligently, operated the vehicle and was injured as a result.

Driscoll filed a response to the motion to dismiss, arguing that the Restatement (Second) of Torts § 390 (1964) and cases from other jurisdictions endorse the validity of a first-party negligent entrustment action. Furthermore, Driscoll argued that Kansas' system of modified comparative fault would not bar his claim as a matter of law because apportioning fault to the parties is a question of fact, making the determination improper on a motion to dismiss for failure to state a claim. Driscoll also argues that because Leroy provided him with an automobile in violation of K.S.A. 8-264 ("No person shall authorize or knowingly permit a motor vehicle owned by him or her under such person's control to be driven upon any highway by any person who is not licensed under the provisions of this act."), Kansas public policy should be construed as allowing Leroy to be held liable for any damages resulting from his negligent entrustment.

On April 21, 2011, the district court conducted a hearing on Leroy's motion to dismiss. After hearing arguments from the parties, the district court announced from the bench that it was granting Leroy's motion to dismiss on the basis that Kansas law currently does not recognize a first-party negligent entrustment claim. On April 29, Martell filed a notice of appeal. Supreme Court Rule 2.03(a) (2012 Kan. Ct. R. Annot. 11) states:

"A notice of appeal that complies with K.S.A. 60-2103(b)—filed after a judge of the district court announces a judgment to be entered, but before the actual entry of judgment—is effective as notice of appeal under K.S.A. 60-2103 if it identifies the judgment or part of the judgment from which the appeal is taken with sufficient certainty to inform all parties of the ruling to be reviewed on appeal."

On June 29, 2011, the district court filed its journal entry granting Leroy's motion to dismiss. Subsequently, on July 19, 2011, Driscoll filed a motion requesting that the district court certify its journal entry as a final judgment under K.S.A. 2011 Supp. 60-254(b). See K.S.A. 2011 Supp. 60-254(b) (When multiple parties are involved in a lawsuit, "the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay.") On that same day, the district court issued an order certifying its decision as a final judgment under K.S.A. 2011 Supp. 60-254(b). This court later granted Driscoll's motion to transfer his appeal to this court.

## ANALYSIS

Driscoll argues that the district court erred in dismissing his claim against Leroy for negligent entrustment. Driscoll contends that a person who negligently entrusts a motor vehicle to another (who is then injured while using the vehicle) can be held liable under Kansas law for the entrustee's injuries. Leroy counters by arguing that Kansas law does not recognize a first-party negligent entrustment claim. In the alternative, he argues that if such a claim exists under Kansas law, Driscoll's negligence in operating the vehicle—as evidenced in his petition—would prevent him from recovering damages based on Kansas' modified comparative fault system. See K.S.A. 60-258a(a) (plaintiff cannot be awarded damages

if plaintiff is found to be 50 percent or more at fault for occurrence resulting in harm to plaintiff). Finally, Leroy claims that Kansas public policy, as evidenced in *Mills* and *Ling*, bars Driscoll from bringing a first-party negligent entrustment claim due to the facts alleged in his petition.

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. The appellate court is required to assume the facts alleged by the plaintiff are true, along with any inferences reasonably drawn from those facts. The appellate court then decides whether the facts and inferences state a claim based on the plaintiff's theory or any other possible theory. *Campbell v. Husky Hogs*, 292 Kan. 225, 227, 255 P.3d 1 (2011).

*Negligent Entrustment*

Under Kansas law, a claim of negligent entrustment may be "based upon knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an incompetent or habitually careless driver." *McCart v. Muir*, 230 Kan. 618, 620, 641 P.2d 384 (1982). "An incompetent driver is one who, by reason of age, experience, physical or mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care." 230 Kan. at 620. These statements of law are consistent with how the Restatement (Second) of Torts § 390 describes a negligent entrustment claim:

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

In *Priestly v. Skourup*, 142 Kan. 127, 130, 45 P.2d 852 (1935)— one of the first Kansas cases to recognize a tort claim based on a negligent entrustment theory—the court quoted with approval from Restatement (First) of Torts § 390 (1934); see also *Pennington v. Davis-Child Motor Co.*, 143 Kan. 753, 755-56, 57 P.2d 428 (1936) (quoting with approval Restatement [First] of Torts § 390).

Section 390 was adopted in 1964 in the Restatement (Second) of Torts with insubstantial changes to its language. This updated version of § 390 was quoted and relied on by a panel of the Court of Appeals in *Snodgrass v. Baumgart*, 25 Kan. App. 2d 812, 815, 974 P.2d 604, *rev. denied* 267 Kan. 887 (1999). Accordingly, we explicitly adopt Restatement (Second) of Torts § 390 as an accurate description of a negligent entrustment claim under Kansas law.

The language of Restatement (Second) of Torts § 390 establishes that a supplier of a chattel has a duty not to give control of the chattel to a person whom the supplier knows or has reason to know is incompetent or incapable of properly using the chattel. *Cf. Gragg v. Wichita State Univ.*, 261 Kan. 1037, Syl. ¶ 8, 934 P.2d 121 (1997) ("An injury is foreseeable so as to give rise to a duty of care where a defendant knows or reasonably should know that an action or the failure to act will likely result in harm."). Restatement (Second) of Torts § 390, Comment b, explains that the supplier of a chattel may not assume that a person will conduct himself or herself properly if the facts which are known or should be known to the supplier indicate that the person is unlikely to do so while using the chattel:

"[O]ne who supplies a chattel for the use of another who knows its exact character and condition is not entitled to assume that the other will use it safely if the supplier knows or has reason to know that such other is likely to use it dangerously, as where the other belongs to a class which is notoriously incompetent to use the chattel safely, or lacks the training and experience necessary for such use, or the supplier knows that the other has on other occasions so acted that the supplier should realize that the chattel is likely to be dangerously used, or that the other, though otherwise capable of using the chattel safely, has a propensity or fixed purpose to misuse it. This is true even though the chattel is in perfect condition, or though defective, is capable of safe use for the purposes for which it is supplied by an ordinary person who knows of its defective condition." Restatement (Second) of Torts § 390, Comment b.

Restatement (Second) of Torts § 390, Comment c, further explains a supplier's liability under a negligent entrustment theory:

"The rule stated in this Section sets out the conditions under which a supplier of a chattel is subject to liability. As always this phrase denotes that a supplier is liable if, but only if, his conduct is the legal cause of the bodily harm complained of and if the person suffering the harm is not subject to any defense such as contributory negligence, which will prevent him from recovering damages there-

for. One who accepts and uses a chattel knowing that he is incompetent to use it safely or who associates himself in the use of a chattel by one whom he knows to be so incompetent, or one who is himself careless in the use of the chattel after receiving it, is usually in such contributory fault as to bar recovery. If, however, the person to whom the chattel is supplied is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions, the supplier may be liable for harm suffered by him, as when a loaded gun is entrusted to a child of tender years. So too, if the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm sustained by the incompetent although such person deals with it in a way which may render him liable to third persons who are also injured." Restatement (Second) of Torts § 390, Comment c.

The language of Comment c clearly envisions an entrustee being able to sue his or her entrustor for negligent entrustment. Such a claim (*i.e.*, a first-party negligent entrustment claim) is described in Illustration 7 to § 390:

"A, who makes a business of letting out boats for hire, rents his boat to B and C, who are obviously so intoxicated as to make it likely that they will mismanage the boat so as to capsize it or to collide with other boats. B and C by their drunken mismanagement collide with the boat of D, upsetting both boats. B, C, and D are drowned. A is subject to liability to the estates of B, C, and D under the death statute, although the estates of B and C may also be liable for the death of D." Restatement (Second) of Torts § 390, Illustration 7.

Under this illustration, B and C are the entrustees. Along with D (a third party), B and C have individual causes of action against A, the entrustor, based on negligent entrustment.

A review of our prior cases shows that a negligent entrustment claim is typically brought by a third party who was injured by an entrustee and seeks recovery for his or her damages from the entrustor. See, *e.g.*, *Fogo, Administratrix, v. Steele*, 180 Kan. 326, 304 P.2d 451 (1956) (mother held responsible for negligence of her 20-year-old son by permitting him to drive her car knowing he was an incompetent driver); *Priestly*, 142 Kan. at 132 ("[T]he owner of an automobile, who lends it to one he knows to be an incompetent, careless and reckless driver, or had reasonable cause to know him to be such, is guilty of negligence in permitting such party to use, drive, or operate the same along the public streets of a city, and is liable to third parties injured by such driver in the negligent op-

eration of such automobile."). But, consistent with Restatement (Second) of Torts § 390, we have also recognized the validity of a first-party negligent entrustment claim.

In *Greenwood v. Gardner*, 189 Kan. 68, 366 P.2d 780 (1961), the defendant took his 10-year-old grandson for an automobile ride out in the country. During the ride, the defendant pulled the vehicle over and requested that the child drive the vehicle. The child got behind the steering wheel and started driving, while the defendant sat in the passenger seat. The child drove the vehicle south for 4 miles until he came to a blind intersection. As the child proceeded to drive the vehicle into the intersection, the vehicle stalled and was struck by a westbound vehicle, causing severe injuries to the child.

The child, by and through his mother, sued his grandfather and the driver of the westbound vehicle. The child alleged that his grandfather was negligent in allowing him to drive the vehicle knowing that he was a child "of such a very tender age as not to comprehend the risks and hazards of driving an automobile, and how to react and conduct himself when placed in a position of danger." 189 Kan. at 70. The defendant filed a demurrer to the child's petition, arguing that the petition failed to sufficiently assert that the defendant's acts were the proximate cause of the car accident. The district court overruled the defendant's demurrer, and this court affirmed, holding that the petition sufficiently stated a cause of action and that the issue of proximate causation was a jury question. 189 Kan. at 71-72.

Based on Restatement (Second) of Torts § 390 and our decision in *Greenwood*, we conclude that a first-party negligent entrustment claim is a viable claim under Kansas law. Additionally, we conclude that based on the cases cited above and § 390, a negligent entrustment claim has four elements: (1) an entrustment of a chattel, (2) to an incompetent entrustee, (3) with knowledge or reason to know of the entrustee's incompetence and, (4) the entrustee's incompetence while using the chattel is the cause in fact of injury or damage to the entrustee and/or another.

In his petition, Driscoll alleged that (1) Leroy permitted him to use a car (titled and insured under Leroy's name) that Leroy had

the exclusive right to control; (2) Driscoll was, among other things, a reckless or incompetent person incapable of safely operating the vehicle; (3) Leroy had knowledge that Driscoll was incompetent; and (4) Driscoll's failure to yield the right-of-way while driving the car resulted in an accident in which Driscoll sustained numerous injuries. Though Driscoll failed to specifically identify in his petition what caused him not to yield the right-of-way, it can be reasonably inferred from the facts in the petition that his failure to yield resulted from his alleged general incompetence as a driver. Accordingly, we conclude that based on the facts alleged in Driscoll's petition, which based on our standard of review we assume to be true, the petition sufficiently states a negligent entrustment claim against Leroy.

We now determine whether Kansas' comparative fault system would bar Driscoll from recovering damages from Leroy based on the facts alleged in the petition.

*The Effect of a Comparative Fault System on a First-Party Negligent Entrustment Claim*

A review of cases from other jurisdictions shows that in states where a system of pure comparative fault has been adopted (*i.e.*, plaintiff is entitled to damages even if he or she is found to be more at fault than the defendant, but damages awarded will be reduced by percentage of fault attributable to plaintiff) courts have relied on Restatement (Second) of Torts § 390 in concluding that a plaintiff may bring a first-party negligent entrustment claim against his or her entrustor, even if the facts clearly show that the plaintiff was negligent in operating the vehicle. See *Blake v. Moore*, 162 Cal. App. 3d 700, 707, 208 Cal. Rptr. 703 (1984) (based on Restatement (Second) of Torts § 390, court held entrustee-plaintiff was entitled to a comparative fault trial that would "result in a weighing of defendant's fault in entrusting his car to plaintiff with knowledge of the intoxication, and the fault of plaintiff in drinking and then driving"); *Gorday v. Faris*, 523 So. 2d 1215, 1219 (Fla. Dist. App. 1988) (based on Restatement (Second) of Torts § 390 and *Blake*, court concluded that action was "properly maintainable under the 'negligent entrustment' theory, and that the evidence tending to

establish negligence on the part of [the entrustee] in consciously deciding to take control of the vehicle, even though he knew he was in no condition to drive, must be weighed and considered, under comparative negligence principles, in relation to the evidence tending to establish negligence on the part of [the entrustor] in turning the car over to one whose faculties he either knew or should have known were impaired by drinking"); *King v. Petefish*, 185 Ill. App. 3d 630, 638, 541 N.E.2d 847 (1989) ("States that have adopted comparative negligence seem to uniformly accept [a first-party negligent entrustment] cause of action. We find [Restatement (Second) of Torts § 390] is appropriately applied to negligent entrustment cases of the type before us and hold, by that authority, a suit brought by an injured entrustee against his entrustor is a viable cause of action in a comparative negligence jurisdiction."); *Hays v. Royer*, 384 S.W.3d 330, 336-37 (Mo. App. 2012) (concluding that under Missouri's pure comparative fault system, a voluntarily intoxicated entrustee may bring a first-party negligent entrustment action).

In jurisdictions where contributory negligence is the rule (*i.e.*, any amount of fault attributable to the plaintiff bars him or her from recovering damages), courts have recognized the validity of a first-party negligent entrustment cause of action under Restatement (Second) of Torts § 390 but have concluded that the negligence attributable to the entrustee ultimately defeats such a claim. See, *e.g.*, *Keller v. Kiedinger*, 389 So. 2d 129, 133 (Ala. 1980); *Meachum v. Faw*, 112 N.C. App. 489, 494, 436 S.E.2d 141 (1993) (holding that "a bailee may bring an action for negligent entrustment against the bailor but that such an action is subject to the defense of contributory negligence"); see also 57A Am. Jur. 2d, Negligence § 313, p. 371 ("[G]enerally an entrustee may bring an action to recover for physical harm to himself or herself resulting from a negligent entrustment. Thus a bailee may bring action for negligent entrustment against a bailor. However, such an action may be subject to the defenses of comparative negligence or contributory negligence.").

Kansas adopted the doctrine of comparative fault in 1974, which requires Kansas courts to reduce an award for damages in propor-

tion to the amount of fault attributable to the party claiming damages. Under our system of comparative fault, a plaintiff cannot be awarded damages if the plaintiff is found to be 50 percent or more at fault for the occurrence resulting in harm to the plaintiff. K.S.A. 60-258a(a) states:

"The contributory negligence of any party in any civil action does not bar such party or such party's legal representative from recovering damages for negligence resulting in death, personal injury, property damage or economic loss, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party."

See *Wisker v. Hart*, 244 Kan. 36, 40-41, 766 P.2d 168 (1988).

Leroy maintains that the facts alleged in Driscoll's amended petition establish as a matter of law that Driscoll was at least 50 percent at fault for the car accident. Accordingly, Leroy argues that Kansas' system of comparative fault should bar Driscoll from recovering damages based on a negligent entrustment theory. Leroy cites *Lydia v. Horton*, 355 S.C. 36, 583 S.E.2d 750 (2003), a case where the South Carolina Supreme Court concluded that based on its modified comparative negligence system, an intoxicated adult motorist was barred from recovering damages under a first-party negligent entrustment theory. In *Lydia*, the plaintiff's petition alleged that he was intoxicated when the defendant allowed him to borrow his car and that the defendant knew or should have known that the plaintiff was not competent to operate the vehicle. The plaintiff ultimately wrecked the car in a single-vehicle accident that rendered the plaintiff a quadriplegic.

The plaintiff brought a first-party negligent entrustment action against the defendant. The trial court granted the defendant's motion for judgment on the pleadings, holding that the plaintiff's admitted negligence (as indicated in his petition) precluded any recovery on his part because, under South Carolina's modified comparative negligence system, his negligence, as a matter of law, outweighed the defendant's negligence. The South Carolina Court of Appeals reversed and remanded, holding that a first-party negligent entrustment claim could be brought pursuant to Restate-

ment (Second) of Torts § 390 (1964). On review, the South Carolina Supreme Court addressed whether their Court of Appeals erred in recognizing a first-party negligent entrustment cause of action brought by an adult who was intoxicated when injured.

In answering the question in the affirmative, the *Lydia* court first noted that Restatement (Second) of Torts § 390 provides several illustrations of when a negligent entrustment claim arises and that only one illustration (the previously cited Illustration 7) refers to a first-party claim. But the court concluded that a "pure" first-party claim could not be "extrapolated from the illustration" because the example involved "a lessee/lessor relationship" where a third-party was injured. The *Lydia* court concluded that these facts made the illustration distinguishable enough to be inapplicable to its case. 355 S.C. at 39. Regardless, the *Lydia* court ultimately declined to adopt Reinstatement (Second) of Torts § 390 based on the facts presented in that case. 355 S.C. at 40 n.2, 43.

After rejecting Restatement (Second) of Torts § 390, the *Lydia* court noted that under South Carolina's modified comparative negligence system, "a plaintiff is barred from recovery if his negligence outweighs the defendant's." 355 S.C. at 40. The *Lydia* court then proceeded to state that South Carolina's

"modified comparative negligence system also bars an intoxicated adult's recovery on a first party negligent entrustment cause of action. We cannot imagine how one could be more than fifty percent negligent in loaning his car to an intoxicated adult who subsequently injured himself. We agree with the trial judge that [the plaintiff's] admission that he was 'appreciably impaired' and that he lost control of the vehicle supports only one conclusion, that [the plaintiff's] negligence exceeded [the defendant's]." *Lydia*, 355 S.C. at 40.

In contrast to *Lydia*, the Colorado Supreme Court concluded that its modified comparative negligence system did not bar a voluntarily intoxicated driver from suing his or her entrustor under a first-party negligent entrustment action theory. In *Casebolt v. Cowan*, 829 P.2d 352 (Colo. 1992), an employer entrusted a vehicle to an employee to drive to and from an out-of-town worksite. On the day the employee was set to return home, he consumed alcohol at the worksite and with his employer and coworkers during lunch, and the employer was aware the employee intended to consume

more alcohol after lunch. The employer did not revoke the entrustment or discourage the employee from drinking. That evening, the employee drove the employer's vehicle home and was killed in a car accident caused by the employee's intoxication. The employee's wife sued the employer, alleging the employer was liable under a theory of negligent entrustment. The employer moved for summary judgment, asserting, among other things, that he did not have a duty to protect the employee from the consequences of his own intoxication. The district court agreed and granted summary judgment, and the Colorado Court of Appeals affirmed the district court's decision.

The Colorado Supreme Court granted review and began its analysis by determining whether the employer owed a duty to the employee. The court noted that Restatement (Second) of Torts § 390 "establishes a framework for examining the entrustment of a vehicle to an individual who presents an unreasonable risk of drinking and driving, based either on known propensity or intoxication on the occasion of the entrustment." 829 P.2d at 358. The court also noted that Illustration 7 of § 390 indicated that the "framers of section 390 specifically envisioned its application to cases of intoxicated entrustees." 829 P.2d at 358. The court stated:

"The rationale underlying imposition of negligent entrustment liability on suppliers of chattels is that one has a duty not to supply a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others. [Citation omitted.] The same logic supports a duty to take reasonable action to terminate the entrustment if the entrustor acquires information that such an unreasonable risk exists or has come into being after the entrustment and the entrustor has the legal right and ability to end the entrustment. We conclude that such a duty is encompassed within the doctrine of negligent entrustment." 829 P.2d at 360-61.

In concluding that "an entrustee is entitled to a comparative fault trial despite his own negligence in becoming intoxicated," the *Casebolt* court cited to Colorado's comparative negligence statute, Colo. Rev. Stat. § 13-21-111(1) (1987), which, like K.S.A. 60-258a, establishes a modified comparative negligence system. The Colorado statute currently states:

"Contributory negligence shall not bar recovery in any action *by any person* or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made." (Emphasis added.) Colo. Rev. Stat. § 13-21-111(1) (2012).

Ultimately, the *Casebolt* court reversed the district court's entry of summary judgment in favor of the employer, concluding that issues of material fact existed as to whether the employer knew or had reason to know that the employee would be likely to use the vehicle in a manner involving unreasonable risk of physical harm to himself. 829 P.2d at 362-63. Thus, unlike the *Lydia* court, the *Casebolt* court refrained from deciding as a matter of law that an entrustee's intoxication would always render him or her more negligent than the entrustor, barring the entrustee from recovering against the entrustor under a modified comparative fault system. For the *Casebolt* court, assigning fault to the parties remained an issue of fact left to the trier of fact to resolve.

We find that several aspects of the *Lydia* decision make it unpersuasive and that the decision reached in *Casebolt* is consistent with Kansas law. First, the *Lydia* court refused to adopt Restatement (Second) of Torts § 390, but we have concluded that § 390 is consistent with our caselaw and, thus, have explicitly adopted it. Second, though the *Lydia* court was correct in noting that Illustration 7 of § 390 is the only reference to a first-party negligent entrustment action, its conclusion that a pure first-party claim cannot be extrapolated from the illustration is troubling.

The *Lydia* court believed that because the illustration involved a lessee/lessor relationship where a third-party was injured, the illustration was inapplicable to the facts of its case. *Lydia*, 355 S.C. at 38-39. But the Restatement (Second) of Torts § 390, Comment a, states that the negligent entrustment rule recited in that section "applies to sellers, lessors, donors or lenders, and to all kinds of bailers, irrespective of whether the bailment is gratuitous or for a consideration." Furthermore, the involvement of a third party in the accident had no bearing on determining the entrustor's liability

to the entrustee. See *Gragg v. Wichita State Univ.*, 261 Kan. 1037, Syl. ¶ 8, 934 P.2d 121 (1997) ("An injury is foreseeable so as to give rise to a duty of care where a defendant knows or reasonably should know that an action or the failure to act will likely result in harm."); *Casebolt*, 829 P.2d at 360-61 ("The rationale underlying imposition of negligent entrustment liability on suppliers of chattels is that one has a duty not to supply a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others."). In *Hays*, 384 S.W.3d at 335, the Missouri Court of Appeals stated:

"We say that it is negligent to entrust a vehicle to an intoxicated person precisely because such an entrustment is likely to lead to a car accident, which is what actually occurred here. Assuming that the [entrustor's] conduct constitutes a breach of the standard of care, the foreseeability of the [entrustee] (and his injury) ties the [entrustor's] act to the harm done, thereby establishing a legal duty. [Citation omitted.] Here, the act of entrustment breached the standard of care, [citation omitted] and the foreseeability of the harm to [the entrustee] gave rise to the common law duty owed by [the entrustor]."

Finally, the *Lydia* court's decision to treat the issue of assigning fault to the parties as a question of law conflicts with Kansas law. Determining the amount of fault attributable to the parties in a negligence action is generally a question of fact. See *Honeycutt v. City of Wichita*, 247 Kan. 250, 251, 796 P.2d 549 (1990) (The comparative fault of the parties is generally a fact question for the jury.); *Moss v. Mamalis*, 36 Kan. App. 2d 151, 158, 138 P.3d 380 (2006) ("[T]he comparative fault of the various parties is a question of fact not appropriate for summary judgment."); *Scales v. St. Louis-San Francisco Ry. Co.*, 2 Kan. App. 2d 491, 498, 582 P.2d 300, *rev. denied* 225 Kan. 845 (1978) ("[U]nder the law of comparative negligence, allocation of each party's proportionate negligence must be a question for the trier of fact."); K.S.A. 60-258a(b) ("Where the comparative negligence of the parties . . . is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants . . . ."); see also *McCart*, 230 Kan. at 623 ("The nature and extent

of negligence of the entruster and of the entrustee are separate and distinct. The percentages of fault may be different in amount and should be determined separately.").

In *St. Clair v. Denny*, 245 Kan. 414, 417, 781 P.2d 1043 (1989), we recognized that there is an exception to treating comparative fault as a fact question:

"Usually, a determination of the presence or absence of negligence should be left to the trier of fact. Causation, like negligence, is also usually determined by a jury. [Citation omitted.] We have noted, however, that '[w]here no evidence is presented on a particular issue, or the evidence presented is undisputed and it is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination.' [Citation omitted.]"

See also *Deal v. Bowman*, 286 Kan. 853, 859, 188 P.3d 941 (2008) (" 'Only when the facts are such that [a] reasonable [person] must draw the same conclusion from them does the question of negligence become one of law for the court.' ").

In *St. Clair*, the action was for the wrongful death of plaintiff's decedent who was killed, along with the defendant, in an intersection collision in which it was apparent that the defendant ran a stop sign and caused the accident. Because neither the decedent nor the defendant survived the accident and there were no witnesses to the accident, there was no evidence from which a jury could conclude that the decedent was comparatively at fault. Thus, we upheld the district court's directed verdict in favor of the plaintiff on the issue of liability. 245 Kan. at 416-20.

*St. Clair* is distinguishable because the facts alleged in Driscoll's amended petition, along with the inferences reasonably drawn from the facts, establish that Leroy and Driscoll acted negligently and that their combined negligence resulted in the car accident. Driscoll alleged in his petition that he failed to yield the right-of-way to another vehicle, which resulted in the car accident. We stated in *Bowman* that "[a]lthough the violation of a traffic ordinance is not always an indication of negligence as a matter of law, this court has held that such a violation is almost always negligence when it is the proximate cause of an injury." 286 Kan. at 865. With regard to Leroy, we have already concluded that Driscoll's petition

sufficiently states a negligent entrustment claim against Leroy. Accordingly, the issue of the parties' comparative fault remains a fact issue that cannot be resolved as a matter of law on a motion to dismiss for failure to state a claim.

*Public Policy's Effect on a First-Party Negligent Entrustment Claim*

Leroy argues that Kansas public policy prevents an entrustor from being liable for an entrustee's injuries resulting from the entrustee's negligent use of the entrustor's chattel. Leroy contends that public policy does not impose a duty upon an entrustor to protect an entrustee from his or her own acts, especially in situations where the entrustee makes a voluntary decision to operate a chattel knowing he or she is incompetent to do so. Leroy points to *Mills v. City of Overland Park*, 251 Kan. 434, 837 P.2d 370 (1992) (Kansas law does not provide a cause of action against a supplier of alcohol for the alcohol-related death of a minor patron); and *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985) (Kansas law does not provide a cause of action against suppliers of alcohol for injuries resulting from the torts of intoxicated patrons, even underage patrons), as reaching analogous holdings providing support for his public policy argument.

Leroy's argument is unpersuasive considering that Kansas law recognizes a first-party negligent entrustment action—as evidenced by *Greenwood v. Gardner*, 189 Kan. 68, 366 P.2d 780 (1961), and our past and now current reliance on Restatement (Second) of Torts § 390, which clearly imposes a duty upon an entrustor not to supply a chattel to an entrustee whom the entrustor knows or should know is likely to misuse the chattel in a manner causing unreasonable risk of harm to the entrustee and/or others. Furthermore, as already noted, our system of comparative fault does not automatically bar a negligent entrustee from recovery. If the facts of a case establish that an entrustor owed a duty of care to an entrustee and that duty was breached, then determining whether the entrustee is entitled to damages (*i.e.*, whether the entrustee's fault is less than entrustor's fault) is a decision left to the trier of fact. This is true even when the entrustee made a

voluntary decision to operate the chattel knowing that he or she was incompetent to do so. See K.S.A. 60-258a(a), (b).

Finally, we reject Leroy's contention that our decisions in *Mills* and *Ling* provide analogical support for his public policy argument. We concluded that no liability existed in *Mills* and *Ling* based on the traditional common-law rule establishing that suppliers of alcohol are not liable for the alcohol-related injuries caused to and by their consumers. We also reached this conclusion based on the legislature's failure to reenact the Dram Shop Act after it was repealed in 1949. We viewed the legislature's failure to reenact the statute as signifying the legislature's intent not to have dram shop liability in Kansas. See *Mills*, 251 Kan. at 437-43; *Ling*, 237 Kan. at 635-40. Because the holdings reached in *Mills* and *Ling* were based on the distinct historical background surrounding dram shop liability in Kansas, we will not read them broadly so as to apply to the context of this case. *Cf. Berry v. National Medical Services, Inc.*, 292 Kan. 917, 922, 257 P.3d 287 (2011) ("In the context of finding duty in a negligence action, this court has found a contrary public policy in only limited situations.").

## CONCLUSION

We conclude that (1) Kansas law recognizes a first-party negligent entrustment claim; (2) if an entrustor owed a duty of care to an entrustee and that duty was breached, then determining the parties' comparative fault for the incident resulting in injuries to the entrustee is a question of fact for the jury to decide; and (3) Kansas public policy does not prevent an entrustor from being liable for an entrustee's injuries that resulted from the entrustee's negligent use of the entrustor's chattel. Accordingly, we reverse the district court's decision to dismiss Driscoll's petition and remand for further proceedings.

\* \* \*

JOHNSON, J., dissenting: I respectfully dissent. I would not expand the concept of negligent entrustment to include a cause of action by an entrustee against the entrustor, *i.e.*, first-party negligent entrustment. I believe that adults have to accept sole responsibility for their own poor choices or careless conduct. The fact that

an adult is known to have frequently exercised bad judgment in the past should not create a duty in every other adult in the universe to protect that careless person from himself or herself. I decline to join with the majority in being an enabler for persons who blame others for their own shortcomings. Here, Leroy should not be held to be Driscoll's insurer just because Leroy tried to help Driscoll with the loan of a car. By expanding the law of negligent entrustment, the majority provides the mechanism to guarantee that no good deed shall go unpunished and that no imprudent act shall go unrewarded.

The obvious and direct cause of Driscoll's injuries was an automobile accident which he admits was proximately caused by his own failure to yield the right-of-way. There is no allegation that either Leroy or his car caused or even contributed to Driscoll's driving infraction or to the accident; Driscoll caused his own injuries. Moreover, there is no allegation that Driscoll was incapable of safely operating the vehicle when he was granted permission to use it. Rather, the allegation, as I understand it, is that Leroy knew of Driscoll's propensity for being reckless or careless and, therefore, should not have been kind enough to permit Driscoll to use the vehicle. The circular absurdity of the situation comes into focus when one contemplates whether Leroy should be able to seek reimbursement from Driscoll, the tortfeasor, because Driscoll's negligence was the proximate cause of Leroy having to respond with damages payable to Driscoll, the plaintiff, *i.e.*, "but for" Driscoll's negligence, Leroy would have owed no one anything, so Driscoll should indemnify Leroy for any damages Leroy will have to pay.

The majority finds support for that circuity, *i.e.*, for a first-party negligent entrustment action, in certain language used in Restatement (Second) of Torts § 390 (1964), which the majority declares to be "an accurate description of a negligent entrustment claim under Kansas law." I submit that, to the extent § 390 purports to establish a first-party claim for negligent entrustment, in addition to our traditional third-party cause of action, it only describes the law in Kansas as of today's opinion. The majority's reliance on *Greenwood v. Gardner*, 189 Kan. 68, 366 P.2d 780 (1961), in sup-

port of the prior existence of a first-party cause of action reads far too much into the actual holding of that opinion.

*Greenwood* was in a slightly different procedural posture than this case. The defendant grandfather in *Greenwood* appealed from the trial court's order overruling his demurrer to plaintiff grandson's petition. A defendant could demur to a petition only where certain statutorily specified defects appeared on the face of the petition, otherwise the defendant had to file an answer to raise his or her defenses. See *Moore v. State Highway Commission,* 188 Kan. 338, Syl. ¶ 1, 362 P.2d 646 (1961). Moreover, if facts outside the petition were necessary for the court to decide an issue, demurrer was improper, and the defendant had to file an answer. See *Moore,* 188 Kan. at 343. In other words, the *Greenwood* holding affirmed the district court's ruling that the defendant had to proceed to file an answer in that case.

Granted, the motion to dismiss for failure to state a claim utilized here is a similar procedure. See Black's Law Dictionary 465 (8th ed. 2004) (in most jurisdictions demurrer is now called motion to dismiss); see also *Knight v. Neodesha Police Dept.,* 5 Kan. App. 2d 472, Syl. ¶ 1, 620 P.2d 837 (1980) (when motion to dismiss raises issue of claim's legal sufficiency, motion treated as modern equivalent of demurrer). But there are significant factual and legal differences between this case and *Greenwood.*

Factually, *Greenwood* did not involve the loan of a vehicle to another. The grandfather was always in possession and control of the vehicle, notwithstanding his move from the driver's seat to the passenger's seat. He could have told the grandson to stop the car at any time. Indeed, the plaintiff's negligence allegations included a claim of "continuing negligence in directing [the grandchild] to drive the automobile into the intersection . . . and in failing to instruct and control the plaintiff child during the course of driving the car into the blind intersection." 189 Kan. at 71. That claim sounds more like a negligent supervision complaint than a negligent entrustment of chattel action. In that vein, one would suspect that a lawsuit would have been filed if grandfather had told the grandson to walk into the blind intersection to look for traffic and the child had been hit by the same car, albeit afoot. Moreover, we

surely are not saying that the duty owed by one adult to supervise the conduct of another adult is on a par with the duty owed by a babysitting grandfather to supervise the conduct of a 10-year-old grandson entrusted to his care. To be sure, the grandson should probably have included a negligent entrustment claim against his own parents for entrusting him to the grandfather.

Legally, the opinion specifically noted that defendant grandfather did not challenge plaintiff grandson's allegations that grandfather committed "various acts of negligence"; but rather the demurring defendant argued that the plaintiff had failed to effectively assert that "such acts [of negligence] were or could have been a proximate cause of any damage to plaintiff." 189 Kan. at 70. Interestingly, *Greenwood* cited to G.S. 1949, 8-222, which provided:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of sixteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle."

But the opinion then proceeded to review the caselaw on proximate cause, emphasizing that "the question of proximate cause is one of fact for the jury." 189 Kan. at 71. In other words, *Greenwood* refused to take away from the jury the question of whether the grandfather's acts of negligence, including the continuing negligence with respect to directing, controlling, and instructing the grandson's driving, were the proximate cause of the grandson's injuries. That is much different than saying this State recognizes a first-party negligent entrustment action for simply allowing another to use one's vehicle.

Moreover, there is a foundational reason to differentiate between first-party and third-party negligent entrustment actions. In the third-party circumstance, the person entrusting another with a chattel is in a better position to know the potential risks associated with that entrustment, as compared to the third-party victim. For instance, here, the driver of the vehicle to whom Driscoll failed to yield the right-of-way was unlikely to have possessed the same knowledge that Leroy had of Driscoll's reckless propensities. Accordingly, the entrustor is in a superior position to avoid the risks

of the entrustee's misuse of the chattel. Thus, as between the unknowing and innocent third party and the knowing entrustor of the chattel, it is acceptable to impose a duty on that entrustor to protect the public at large against the likelihood of such chattel misuse.

However, the superior knowledge and risk-avoidance rationales do not exist in the first-party scenario. The entrustee has as good, if not better, knowledge of the potential risks and definitely has a greater ability to avoid those risks. Here, for instance, Driscoll knew better than Leroy as to whether Driscoll would drink before driving or would ignore the rules of the road when driving Leroy's vehicle. Indeed, Driscoll was the *only* person that could have completely avoided the risk of this accident, because if Leroy had not loaned Driscoll a vehicle, Driscoll might well have obtained one from another source and caused the accident anyway. In short, I would find that Leroy did not owe any duty to Driscoll with respect to Driscoll's operation of the loaned vehicle.

Finally, I must comment on the counterintuitive scenario created by declaring the existence of a first-party negligent entrustment cause of action while maintaining the prohibition on any cause of action against a supplier of alcohol for the alcohol-related injuries caused to and by the consumers of the alcohol. Under the majority's holding, if a person had provided sufficient alcohol to Driscoll to get him falling down drunk before he left in Leroy's car to get into the accident, neither the third-party accident victim nor Driscoll himself could sue the alcohol provider. But *both* the third-party victim and Driscoll can sue Leroy because he loaned Driscoll his car. In other words, the person who provided the *reason* for the accident is free from liability, while the person who simply provided the instrumentality of the accident is liable all around. That simply should not be, and the majority cannot avoid that silliness by blaming the legislature. It is this court, not the legislature, that is adopting the first-party negligent entrustment cause of action via common-law declaration. I would not do so.