800 S.E.2d 479

**Reid Harold DONZE, Plaintiff,**

**v.**

**GENERAL MOTORS, LLC, Defendant.**

**Appellate Case No. 2016-001437**
**Opinion No. 27719**

Supreme Court of South Carolina.

Heard January 11, 2017
Filed May 17, 2017

Ronnie L. Crosby and Austin H. Crosby, both of Peters, Murdaugh, Parker, Eltzroth & Detrick, of Hampton; Bert G. Utsey, III, of Peters, Murdaugh, Parker, Eltzroth & Detrick, of Walterboro; S. Kirkpatrick Morgan, Jr. and Charles T. Slaughter, both of Walker & Morgan, LLC, of Lexington; and Kathleen C. Barnes, of Barnes Law Firm, LLC, of Hampton, all for Plaintiff.

Joel H. Smith, Angela G. Strickland and Kevin J. Malloy, all of Bowman & Brooke, LLP, of Columbia; David G. Owen, of Law Center, of Columbia; John M. Thomas and Jill M. Wheaton, both of Dykema Gossett, of Ann Arbor, Michigan; and Michael P. Cooney, of Dykema Gossett, PLLC, of Detroit, Michigan, all for Defendants.

Henry B. Smythe, Jr. and Dana W. Lang, both of Womble Carlyle Sandridge & Rice, LLP, of Charleston, for Amicus Curiae, The Products Liability Advisory Council, Inc..

Steve A. Matthews, of Haynsworth Sinkler Boyd, PA, of Columbia; Phil Goldberg and Victor E. Schwartz, both of Shook, Hardy & Bacon, LLP, of Washington, DC, for Amicus Curiae, Alliance of Automobile Manufacturers, Inc..

## CERTIFIED QUESTION

JUSTICE HEARN:

This case concerns the applicability of comparative negligence to strict liability and breach of warranty claims in a crashworthiness case brought by Plaintiff Reid Harold Donze against Defendant General Motors ("GM"). District Judge Timothy M. Cain of the United States District Court for the District of South Carolina certified two questions to this Court addressing the defenses available to a manufacturer in crashworthiness cases brought under strict liability and breach of warranty theories. We hold the defense of comparative negligence does not apply in crashworthiness cases, and that South Carolina's public policy does not bar a plaintiff, allegedly intoxicated at the time of the accident, from bringing a crashworthiness claim against the vehicle manufacturer.

## FACTUAL/PROCEDURAL HISTORY

In November of 2012, Donze and his friend, Allen Brazell, were driving around Greenville County in Donze's 1987 Chevrolet pickup truck. Although in dispute, there is evidence—including deposition testimony from Donze himself—indicating Brazell and Donze had been smoking synthetic marijuana earlier that morning. While Brazell was driving,[1] they came to an intersection controlled by a stop sign. Brazell failed to stop and pulled directly in front of a Ford F-350 truck towing a horse trailer. Unable to stop, the Ford struck Donze's truck on the driver's side, and the truck burst into flames. Brazell died as a result of the fire, and Donze suffered severe burns to eighty percent of his body.

Donze filed this crashworthiness action against GM, alleging a defect in the truck's design—specifically, the placement of the gas tank outside of the truck's frame—caused the fire, and

---

1. We note that at the time of the accident, Brazell was the driver and Donze was the passenger. GM argues Brazell's negligence should be imputed to Donze because they were engaged in a joint enterprise to smoke marijuana and drive while under the influence. Since this factual issue is outside the scope of the questions certified to this Court, for the purposes of this opinion we treat Brazell's negligence as that of Donze's.

seeking damages only for his enhanced burn injuries.[2] GM filed a motion for summary judgment arguing Donze should be barred from recovery pursuant to South Carolina's public policy against driving while impaired. In the alternative, GM asserted comparative negligence should apply to limit Donze's recovery. Judge Cain denied GM's motion and certified two questions to this Court.

## CERTIFIED QUESTIONS

I.  Does comparative negligence in causing an accident apply in a crashworthiness case when the plaintiff alleges claims of strict liability and breach of warranty and is seeking damages related only to the plaintiff's enhanced injuries?

II. Does South Carolina's public policy bar impaired drivers from recovering damages in a crashworthiness case when the plaintiff alleges claims of strict liability and breach of warranty?

## STANDARD OF REVIEW

■ When a certified question raises a novel question of law, this Court is free to answer the question "based on its assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right." *Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 101, 668 S.E.2d 798, 800 (2008).

## LAW/ANALYSIS

### I.  COMPARATIVE NEGLIGENCE IN CRASHWORTHINESS CASES

Donze argues comparative negligence is inapplicable in crashworthiness cases where the plaintiff is only seeking recovery of the enhanced injuries caused by the alleged defect. In particular, Donze asserts that in crashworthiness cases, the damages from the initial collision and those caused by the alleged design defect are divisible. In other words, according to Donze, the enhanced injuries are a subsequent and separate

---

2. Donze's injuries from the initial impact were limited to a fractured rib and hip bones.

event, the *sole* cause of which is the manufacturer's defective design. Therefore, any negligence on the part of the plaintiff in causing the *initial* collision is irrelevant. We agree for the reasons set forth below, and therefore answer this first certified question, "no."

This Court first adopted the crashworthiness doctrine in *Mickle v. Blackmon*, 252 S.C. 202, 243, 166 S.E.2d 173, 192 (1969). In *Mickle* we recognized the high frequency of roadway accidents is common knowledge such that "an automobile manufacturer knows with certainty that many users of his product will be involved in collisions, and that the incidence and extent of injury to them will frequently be determined by the placement, design and construction of [the vehicle's] components. . . ." 252 S.C. at 230, 166 S.E.2d at 185. Therefore, we held vehicle manufacturers have a duty "to take reasonable precautions in the light of the known risks, balancing the likelihood of harm, and the gravity of harm if it should happen, against the burden of feasible precautions which would tend to avoid or minimize the harm." *Id.* at 243, 166 S.E.2d at 192.

Although South Carolina has not yet addressed whether comparative negligence may be raised as a defense in crashworthiness cases, a number of other jurisdictions have considered this question and reached differing results. We are aware of twenty-two states which have resolved this issue either statutorily or through case law. Of those, sixteen states permit a comparative fault analysis to reduce a plaintiff's recovery in crashworthiness cases and six do not.[3]

---

3. *Compare* FLA. STAT. ANN. § 768.81 (West 2016); MINN. STAT. ANN. § 604.01 (West 2017); *Montag v. Honda Motor Co.*, 75 F.3d 1414, 1419 (10th Cir. 1996) (holding, based upon Colo. Rev. Stat. § 13-21-406 (West 2016), the jury must weigh a plaintiff's negligence in causing an initial collision against a defendant's defective design in a crashworthiness case); *Morris v. Mitsubishi Motors N. Am., Inc.*, 782 F.Supp.2d 1149, 1160–61 (E.D. Wash. 2011) (noting WASH. REV. CODE ANN. § 4.22.015 (West 2016) extends comparative fault analysis to strict liability claims like the crashworthiness action at issue); *Volkswagen of Am., Inc. v. Marinelli*, 628 So.2d 378, 384 (Ala. 1993) (recognizing contributory negligence as an affirmative defense against crashworthiness claims); *Gartman v. Ford Motor Co.*, 430 S.W.3d 218, 220–21 (Ark. Ct. App. 2013) (noting Arkansas follows the majority rule that a plaintiff's negligence "is relevant in a crashworthiness case for the purpose of apportioning the overall responsibility for damages"); *Doupnik v. Gen. Motors Corp.*, 225 Cal.App.3d 849, 865, 275 Cal.Rptr. 715 (1990)

("The doctrine of comparative fault is applicable to crashworthiness cases."); *Meekins v. Ford Motor Co.*, 699 A.2d 339, 346 (Del. Super. Ct. 1997) (holding "[t]he comparative negligence of a plaintiff is a defense to a product liability action based on an enhanced injury theory"); *Green v. Ford Motor Co.*, 942 N.E.2d 791, 795–96 (Ind. 2011) (holding evidence of plaintiff's negligence was a proximate cause of the injuries is admissible in crashworthiness cases); *Jahn v. Hyundai Motor Co.*, 773 N.W.2d 550, 560 (Iowa 2009) (adopting the majority rule and holding "the principle[ ] of comparative fault ... appl[ies] in enhanced injury cases"); *Lowe v. Estate Motors Ltd.*, 428 Mich. 439, 410 N.W.2d 706, 707–08 (1987) (noting "evidence concerning the existence of and [a plaintiff's] failure to use safety devices generally" is admissible to establish comparative negligence in crashworthiness cases); *Estate of Hunter v. Gen. Motors Corp.*, 729 So.2d 1264, 1271 (Miss. 1999) (holding comparative negligence is an available defense in crashworthiness products liability actions); *Day v. Gen. Motors Corp.*, 345 N.W.2d 349, 357 (N.D. 1984) (holding a plaintiff's "contributing causal negligence" will reduce the plaintiff's injury in strict liability and products liability cases, and specifically in crashworthiness cases, such evidence is relevant to causation of both the initial collision as well as any enhanced injuries); *Dahl v. Bayerische Motoren Werke (BMW)*, 304 Or. 558, 748 P.2d 77, 83–84 (1987) (holding comparative fault applies in crashworthiness cases); *Sherer v. Linginfelter*, 29 S.W.3d 451, 455 (Tenn. 2000) (holding "comparative fault principles will apply to products liability actions such as the case before us, in which the defective product did not cause or contribute to the underlying accident but did cause 'enhanced injuries' "), *and Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 427 (Tex. 1984) (judicially adopting "a comparative apportionment system, independent of statutory comparative negligence" to apply in strict liability cases, including crashworthiness cases), *with* Ariz. Rev. Stat. Ann. § 12-2509(B) (West 2016) (stating a plaintiff's comparative negligence "is not a defense to a claim alleging strict liability in tort, including any product liability action ... except claims alleging negligence"); *Thornton v. Gray Automotive Parts Co.*, 62 S.W.3d 575, 587 (Mo. Ct. App. 2001) ("If the plaintiff's use (or misuse) of the product sets the injury-causing sequence in motion, and that use was reasonably foreseeable by the manufacturer, then the [enhanced injury] doctrine holds that the plaintiff's conduct is not relevant. ... [T]he manufacturer cannot even raise the misconduct of the plaintiff as a basis for comparative fault."); *Shipler v. Gen. Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807, 829–30 (2006) (interpreting amendments to Neb. Rev. Stat. §§ 25-21,185.07 to 185.12 as excluding comparative negligence as a defense in any strict products liability actions); *Andrews v. Harley Davidson, Inc.*, 106 Nev. 533, 796 P.2d 1092, 1095 (1990) (holding comparative negligence "is not a defense in a strict liability case where the issue is whether the design of a vehicle is crashworthy"); *Green v. Gen. Motors Corp.*, 310 N.J.Super. 507, 709 A.2d 205, 212 (N.J. Super. Ct. App. Div. 1998) (quoting *Green v. Sterling Extruder Corp.*, 95 N.J. 263, 471 A.2d 15, 20 (1984)) (holding the "manner of driving [was] irrelevant to the plaintiff's crashworthiness issue," because "once the defendant has 'a duty to protect persons from the consequences of their own foreseeable faulty conduct, it makes no sense to deny recovery because of the

Most states espousing the majority view have statutes which require application of comparative fault analysis in *all* personal injury actions, regardless of the cause of action or the theory of liability under which they are brought. *See, e.g.*, Fla. Stat. Ann. § 768.81 (expressly applying comparative negligence to all "civil action[s] for damages based upon a theory of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories"); *Bishop v. Tariq, Inc.*, 384 S.W.3d 659, 663–64 (Ark. Ct. App. 2011) (citing Ark. Code Ann. § 16-64-122 (West 2016)) (holding the comparative fault defense would be available in enhanced injury cases because Arkansas's comparative-fault statute "provides that, *in all actions for personal injuries or wrongful death in which recovery is predicated on fault,* liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party from whom he seeks to recover," where fault is defined "to include[ ] *any* act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is a *proximate cause* of any damages sustained by any party" (emphasis in original)); *Meekins*, 699 A.2d at 344–45 (noting Del. Code Ann. tit. 10 § 8132 (West 2016) patently allows comparative negligence to reduce a plaintiff's recovery in *all* personal injury actions).

However, some state courts have themselves extended comparative fault principles to crashworthiness claims. For example, the Supreme Court of California held in *Daly v. General Motors Corporation* that comparative negligence principles apply in strict products liability actions such that evidence of a plaintiff's intoxicated misuse of a vehicle was admissible in a crashworthiness case. 20 Cal.3d 725, 731–38, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). Specifically, the court reasoned that the policies supporting strict liability—permitting claimants to recover without having to prove a specific act of negligence on the part of the manufacturer and incentivizing the safe and responsible design and manufacturing of goods—would not be

nature of the plaintiff's conduct' "), *and Gaudio v. Ford Motor Co.*, 976 A.2d 524, 540 (Pa. Super. Ct. 2009) ("[T]he Supreme Court ruled that negligence concepts cannot be used to reduce the amount of recovery in a strict liability case, and that as a result comparative negligence may not be asserted as a defense in [crashworthiness] actions.").

thwarted by the application of comparative principles, and that the evolving nature of tort law requires "new remedies [to be] judicially created, and old defenses judicially merged," in order to achieve equitable results. *Id.* at 736–38, 144 Cal.Rptr. 380, 575 P.2d 1162. The Supreme Court of Tennessee has also held a comparative fault analysis applies in strict products liability actions, including crashworthiness claims. *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684, 693, 694 (Tenn. 1995). In particular, the court held "[t]he respective fault of the manufacturer and of the consumer should be compared with each other with respect to all damages and injuries for which the fault of each is a cause in fact and a proximate cause." *Id.* at 694.

On the other hand, a minority of states have declined to recognize comparative negligence as a defense in strict liability crashworthiness cases. In some states the legislature resolved the question. *See, e.g.*, Ariz. Rev. Stat. Ann. § 12-2509 (stating a plaintiff's comparative negligence "is not a defense to a claim alleging strict liability in tort, including any product liability action … except claims alleging negligence"); *Shipler*, 710 N.W.2d at 829–30 (interpreting the legislature's removal of "strict liability" from the comparative fault statute to exclude comparative negligence as a defense in all strict liability actions, including crashworthiness cases). Still other jurisdictions, including Nevada, New Jersey, and the District Court for the District of South Carolina, have reached the same conclusion—that comparative negligence is incompatible with strict liability crashworthiness claims—based upon their interpretation of the crashworthiness doctrine. *See Andrews*, 796 P.2d at 1095; *Green*, 709 A.2d at 212; *Jimenez v. Chrysler Corp.*, 74 F.Supp.2d 548 (D.S.C. 1999), *affirmed on this issue and reversed on separate grounds by Jimenez v. Daimler-Chrysler Corp.*, 269 F.3d 439 (4th Cir. 2001) [hereinafter *Jimenez I* and *II*].

In *Andrews*, the plaintiff was driving with a blood alcohol content level of .146 when he crashed his motorcycle into the back of a parked car. 796 P.2d at 1094. The plaintiff then brought a crashworthiness claim against Harley Davidson alleging that as a result of the collision a spring clip holding the gas tank broke, causing the gas tank to fly up and hit the plaintiff, enhancing his injuries. *Id.* at 1093–94. At trial, the

court admitted evidence of the plaintiff's intoxication to prove the motorcycle's design was not the proximate or sole proximate cause of the plaintiff's injuries. *Id.* at 1094. The Nevada Supreme Court reversed, holding it was reversible error to admit evidence of the plaintiff's intoxication. *Id.* at 1095–96. The court noted that under the Nevada crashworthiness doctrine, once a jury determines a defect exists, a plaintiff's recovery is only precluded when he misuses the product in a way the manufacturer could not reasonably foresee. *Id.* at 1095. Because "[n]egligent driving of a vehicle is a foreseeable risk" and "it is foreseeable that a plaintiff, who is intoxicated, will drive negligently and get into an accident," the court concluded that the plaintiff's negligence would not preclude his recovery. *Id.* Moreover, the court explained

> A major policy behind holding manufacturers strictly liable for failing to produce crashworthy vehicles is to encourage them to do all they reasonably can do to design a vehicle which will protect a driver in an accident. Hence, the jury in such a case should focus on whether the manufacturer produced a defective product, not on the consumer's negligence.

*Id.* Therefore, the court held that comparative negligence "is not a defense in a strict liability case where the issue is whether the design of a vehicle is crashworthy" and thus evidence of the plaintiff's intoxication or negligence was irrelevant. *Id.*

Similarly, in *Green*, the Appellate Division of the New Jersey Superior Court held evidence of a plaintiff's negligent driving was irrelevant to the proximate cause of any enhanced injuries in a crashworthiness action. 709 A.2d at 212. In that case, the plaintiff was speeding and veering across the dividing line when he saw a school van approaching in the opposite direction. *Id.* at 207. Unable to regain his lane in time, the left side of the plaintiff's vehicle struck the van at a speed between forty-five and eighty-one miles per hour. *Id.* at 208. As a result of the collision, the plaintiff suffered a spinal cord injury which rendered him a quadriplegic, and he brought a crashworthiness suit against General Motors alleging the collapse of the car's roof frame enhanced his injuries. *Id.* at 208–09. On appeal, General Motors argued the trial judge improperly instructed the jury not to consider evidence of the plaintiff's

speeding when determining whether the vehicle's roof frame was defective. *Id.* at 209. However, the appellate court held the trial judge was correct that "the speed limit and manner of driving were irrelevant to the plaintiff's crashworthiness issue," because "once the defendant has 'a duty to protect persons from the consequences of their own foreseeable faulty conduct, it makes no sense to deny recovery because of the nature of the plaintiff's conduct.'" *Id.* at 212 (quoting *Sterling Extruder Corp.*, 471 A.2d at 20). The court reasoned that

> When GM placed this vehicle on the market, it certainly knew that it would be driven at lawful speeds up to fifty-five miles per hour and in some states sixty-five miles per hour. It also knew that the vehicle might collide with another vehicle similarly operated.... We see, therefore, that if GM was required to design a reasonably safe vehicle for its intended and reasonably foreseeable use, it should, if possible, have designed a vehicle that could reasonably withstand a crash at considerably higher speeds than in this case.

*Id.* at 211–12. Thus, the court held that "[i]nsofar as [the] plaintiff's injuries were caused solely by the product defect," any negligence on the part of the plaintiff in causing the collision was irrelevant. *Id.* at 212.

In *Jimenez I*, the Jimenez's minivan was involved in a rollover accident during which the liftgate latch failed. 74 F.Supp.2d at 552. As a result, the plaintiff's son was killed when he was ejected from the vehicle through the open liftgate door. *Id.* Thereafter, the plaintiff brought suit against Chrysler, the minivan's manufacturer, alleging multiple causes of action, including a crashworthiness claim for negligent design of the liftgate latch. *Id.* at 552–53. After the jury returned a verdict for the plaintiff, Chrysler moved for a new trial arguing the district court erred, *inter alia*, in excluding evidence related to causation of the underlying accident. *Id.* at 564.

In addressing Chrysler's motion, the district court looked to this Court's decision in *Mickle*, noting that "[t]he crashworthiness doctrine imposes liability on automobile manufacturers for design defects that *enhance*, rather than cause, injuries." *Id.* at 565 (citing *Mickle*, 252 S.C. at 233–36, 166 S.E.2d at 187–88) (emphasis added). In other words, because an under-

lying accident is presumed in crashworthiness cases, a manufacturer's liability is predicated on whether the injuries were enhanced by a defect in the automobile, not on the precipitating cause of the collision. *Id.*; *cf. Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68, 74, 393 S.E.2d 914, 917 (1990) ("Where such a duty [to prevent a known risk] exists ... clearly the very act which the defendant has a duty to prevent cannot constitute contributory negligence or assumption of the risk as a matter of law."). Therefore, according to the district court, "[u]nder this [*Mickle*] rubric, any alleged negligence by [another party] is remote—and thus irrelevant—and hence properly excluded." *Id.* at 566.

Moreover, although the district court acknowledged that courts are split on the issue of permitting comparative negligence to be injected into crashworthiness cases, it concluded the better rule was to exclude any evidence of a plaintiff's or another defendant's alleged negligence in causing the initial collision. *Id.*

> First of all, such a rule intrinsically dovetails with the crashworthiness doctrine: Because a collision is presumed, and enhanced injury is foreseeable as a result of the design defect, the triggering factor of the accident is simply irrelevant. Secondly, the concept of "enhanced injury" effectively apportions fault and damages on a comparative basis; defendant is liable only for the increased injury caused by its own conduct, not for the injury resulting from the crash itself. Further, the alleged negligence causing the collision is legally remote from, and thus not the legal cause of, the enhanced injury caused by a defective part that was supposed to be designed to protect in case of a collision.

*Id.* Based upon this rationale and the ultimate goal of the crashworthiness doctrine to place responsibility on the manufacturer for failing to design a crashworthy vehicle, the district court held that another party's comparative negligence in causing the initial accident was not a defense to a negligent design crashworthiness claim. *Id.* at 565.

Chrysler appealed the district court's order to the Fourth Circuit, arguing the district court erred in denying its motion for a new trial based on the exclusion of evidence relating to the driver's negligence. *Jimenez II*, 269 F.3d at 452. Although

the Fourth Circuit noted that South Carolina courts had not explicitly addressed the issue, the court affirmed the district court's ruling that "in light of the crashworthiness principle, the cause of the original accident was not relevant to proving a claim for enhanced injury." *Id.* at 453.

In the years since *Jimenez I* and *II* were decided, this Court has not had an opportunity to address the applicability of comparative negligence in crashworthiness cases until now. Upon careful review and consideration, we find the minority rule—specifically the analysis from the Supreme Court of Nevada in *Andrews* and the South Carolina District Court's reasoning in *Jimenez I*—to be the better-reasoned approach in light of the crashworthiness principles established in *Mickle*.

Unlike many states who have taken the alternative view, South Carolina has no statutory mandate to apply comparative negligence in crashworthiness cases based upon theories of strict liability and breach of warranty. As discussed more fully *infra*, both strict liability and breach of warranty are statutory constructs as are the available defenses to these causes of action. *See* S.C. Code Ann. §§ 15-73-10, -20 (2005); 36-2-314, -711 (2003). If the General Assembly intends for comparative negligence to constitute a defense under either of these theories, it is unquestionably capable of amending these statutory schemes accordingly.

Additionally, as the district court pointed out in *Jimenez I*, the underlying premise of the crashworthiness doctrine—that manufacturers are only liable for enhanced damages caused by a design defect when the defect does not cause the initial collision—is already taken into account through the concept of enhanced injuries. 74 F.Supp.2d at 566. In other words, the doctrine of crashworthiness itself divides and allocates fault to a manufacturer for damages it alone caused, so it would be incongruous to allow comparative negligence to apply to further reduce the manufacturer's liability or shift that responsibility to another party. Moreover, to permit comparative negligence in crashworthiness actions brought under strict liability and breach of warranty theories would conflate those two distinct doctrines with ordinary negligence. *See, e.g., Smith v. Smith*, 278 N.W.2d 155, 160 (S.D. 1979) (holding that, due to

the unique nature of strict liability and breach of warranty actions where the conduct of the manufacturer is irrelevant in determining liability, it would be "inconsistent to hold that the user's negligence is material when the seller's is not").

■ Furthermore, although the crashworthiness action in *Jimenez* was brought under a negligence theory—as opposed to the strict liability and breach of warranty claims at issue in this case—we see no reason to distinguish between these theories of liability when utilized in conjunction with the crashworthiness doctrine. Regardless of the theory under which a plaintiff chooses to bring a crashworthiness claim, the heart of the crashworthiness doctrine remains the same— manufacturer liability for enhanced injuries following a fore-seeable collision. *Jimenez I*, 74 F.Supp.2d at 565 (citing *Mickle*, 252 S.C. at 233–26, 166 S.E.2d at 187–88). Thus, any negligence by the plaintiff or another defendant which may have contributed to the initial collision is entirely irrelevant. *Id.* at 566. Therefore, we adopt the rationale established by the district court in *Jimenez I* and hold that comparative negligence does not apply to permit the negligence of another party—whether the plaintiff or another defendant—in causing an initial collision to reduce the liability of a manufacturer for enhanced injuries in a crashworthiness case.[4] Accordingly, we answer the first certified question, "no."

## II. PUBLIC POLICY

■ GM argues South Carolina's statutory and case law establish a strong public policy against impaired driving which should bar Donze from recovering in this case. Specifically, GM suggests this Court's opinions in *Tobias v. Sports Club, Inc.*, 332 S.C. 90, 504 S.E.2d 318 (1998), and *Lydia v. Horton*, 355 S.C. 36, 583 S.E.2d 750 (2003), created "a public policy-based affirmative defense" against impaired plaintiffs bringing *any* cause of action to recover damages, including strict

---

4. Our ruling today is limited to the certified questions before us which concern only the applicability of comparative negligence to a plaintiff in causing the collision in a crashworthiness case. We note, as did the district court in *Jimenez I*, that "[c]omparative negligence related to the [defective component] itself—tying [a door] shut for example—could still be a defense, if a factual basis existed...." *Jimenez I*, 74 F.Supp.2d at 566 n.11.

liability and breach of warranty claims. Additionally, the Products Liability Advisory Council, Inc., *amicus curiae*, points to a number of statutes demonstrating the General Assembly's policy of deterring impaired driving. Although we recognize South Carolina has a strong public policy against impaired driving, the current law of this state does not preclude an intoxicated plaintiff from bringing a crashworthiness case under theories of strict liability and breach of warranty. Therefore, we answer this second certified question, "no."

In *Tobias*, the plaintiff was driving home from a bar while intoxicated, crossed the center line, and collided with another vehicle. 323 S.C. 345, 347, 474 S.E.2d 450, 451 (Ct. App. 1996). The plaintiff brought a negligence action alleging the bar violated section 61-4-580(A)(2) of the South Carolina Code (Supp. 2016) by continuing to serve him while he was visibly intoxicated. However, this Court declined to "recognize a 'first party' cause of action against the tavern owner by an intoxicated adult predicated on an alleged violation of ... [section 61-4-580(A)(2).]" 332 S.C. at 91, 504 S.E.2d at 319. Nevertheless, third parties injured by an intoxicated patron do have a cause of action against a bar for violation of section 61-4-580(A)(2). *Id.* at 93, 504 S.E.2d at 320.

Similarly, in *Lydia*, the plaintiff was drunk when the defendant allowed him to borrow his car. 355 S.C. at 37, 583 S.E.2d at 751. As a result of the plaintiff's intoxication, he crashed the vehicle and was severely injured. *Id.* The plaintiff then brought a negligent entrustment action against the defendant alleging the defendant knew or should have known the plaintiff was incompetent to operate the vehicle at that time. *Id.* This Court barred the plaintiff's action, holding:

> The essence of this case and the *Tobias* case are the same, for in both cases, the plaintiff, who was voluntarily intoxicated when the accident occurred, is attempting to deflect the responsibility that should be imposed upon himself towards another. Just as this plaintiff cannot bring a first party cause of action to challenge the discretionary conduct of the tavern owner, he cannot bring the same action to challenge the discretionary conduct of his entrustor.

*Id.* at 42–43, 583 S.E.2d at 754.

GM argues the public policy underlying our holdings in *Tobias* and *Lydia* should be extended to preclude impaired

drivers from bringing strict products liability or breach of warranty actions to recover *any* damages they incur while intoxicated. We decline to do so. In those cases, this Court refused to recognize new, first party causes of action for impaired plaintiffs under the common law doctrines of negligence and negligent entrustment. *Tobias*, 332 S.C. at 93, 504 S.E.2d at 320; *Lydia*, 355 S.C. at 39, 583 S.E.2d at 752. Put simply, we declined to create a new common law duty of care for discretionary actions taken with respect to intoxicated individuals. *See Lydia*, 355 S.C. at 42–43, 583 S.E.2d at 754.

However, strict liability and breach of warranty are statutory causes of action. *See* S.C. Code Ann. §§ 15-73-10 (2005), 36-2-314 (2003). In these cases manufacturers already have statutory duties to design reasonably safe, merchantable products which, if breached, entitle a consumer to bring a first party action for damages, regardless of the consumer's mental state at the time of the injury. *See* S.C. Code Ann. §§ 15-73-10 ("One who sells any product in a defective condition unreasonably dangerous to the user ... is subject to liability"), 36-2-314 (stating a merchant will be liable for breach of warranty if the goods sold are not merchantable at the time of the sale). Thus, to extend *Tobias* and *Lydia* to bar intoxicated plaintiffs from bringing strict liability or breach of warranty actions would have the effect of adding an impaired plaintiff exception to these statutory causes of action, which exceeds this Court's authority. *Barnwell v. Barber-Colman Co.*, 301 S.C. 534, 538, 393 S.E.2d 162, 163–64 (1989) (citations omitted) ("[Courts] cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of legislation rests with the Legislature, and it is the province of the Courts to construe, not to make, the laws."). Therefore, we reject GM's argument that this state's public policy articulated in *Tobias* and *Lydia* should bar Donze from bringing strict liability or breach of warranty claims.

We similarly find GM's statutory-based public policy arguments unavailing. Specifically, GM asserts that, in light of the South Carolina General Assembly's pervasive public policy toward discouraging drug and alcohol abuse, this Court should

interpret the strict liability and breach of warranty statutes to bar recovery by impaired plaintiffs.

The General Assembly has made it clear that the public policy of this state treats infractions resulting from the influence of drugs and alcohol harshly. *See, e.g.,* S.C. Code Ann. § 15-38-15(F) (tortfeasors whose conduct involves drugs or alcohol are subject to pure joint and several liability regardless of their at-fault percentage, while other tortfeasors who are less than fifty percent at fault will only be liable for their allocated percentage of damages.); §§ 56-5-2950–2951 (Supp. 2016) (refusal to submit to a blood-alcohol breathalyzer test shall result in automatic suspension of one's driver's license); § 59-149-90 (2004) (students who are convicted or plead to certain drug and alcohol related offenses will become ineligible for Legislative Incentives for Future Excellence Scholarships).

Thus, the General Assembly is both capable of and willing to create statutory consequences for drug and alcohol abuse when it sees fit. This Court has repeatedly declined to create or expand public policies which the General Assembly could have adopted had it chosen to do so, and we decline to deviate from that practice now. *See, e.g., Michau v. Georgetown County ex rel. S.C. Counties Workers Comp. Trust,* 396 S.C. 589, 595 n.4, 723 S.E.2d 805, 808 n.4 (2012) (declining to interpret an additional requirement into a workers' compensation statute where the General Assembly chose not to adopt a version of the statute including the requirement); *Montgomery v. AT&T Nassau Metals Corp.,* 304 S.C. 436, 439, 405 S.E.2d 393, 394 (1991) (declining to extend the applicability of the workers' compensation survival statute where "[h]ad the General Assembly so intended, it could have included such a provision applicable to nonwork-related deaths"). Moreover, this Court has emphasized its preference for exercising "restraint when undertaking the amorphous inquiry of what constitutes public policy" based upon our understanding that the General Assembly is the principal source of public policy declarations. *Taghivand v. Rite Aid Corp.,* 411 S.C. 240, 244, 768 S.E.2d 385, 387 (2015).

## CONCLUSION

For the reasons stated above, we answer both certified questions, "no."

24

BEATTY, C.J., FEW, J., and Acting Justice Clifton Newman, concur.

KITTREDGE, J., concurring in a separate opinion.

JUSTICE KITTREDGE:

Accepting the foundational premise of the academic question posed by the federal district court, I concur in result.[5] I find Justice Hearn's majority opinion scholarly and well-reasoned.

At times, certified questions place this Court in the position of answering questions in the abstract. We do so in furtherance of our prerogative to declare the law of South Carolina, and the federal courts' respectful deference to our authority to do so. Certified questions are, of course, best suited for questions of law. We are often presented with ostensible questions of law that are predicated on certain factual assumptions. We must answer those questions narrowly and recognize that even a slight tilting of the facts can impact the analysis and alter the conclusion. I believe the primary certified question today presents such a situation.

I agree with the majority in the abstract that in a true crashworthiness case, the alleged comparative fault of the plaintiff in causing the initial collision is not relevant and "that manufacturers are only liable for enhanced damages caused by a design defect when the defect does not cause the initial collision." My concern here is that today's apparent categorical rule may be applied to preclude a manufacturer from asserting a valid defense, which in my judgment would implicate due process considerations. For example, where a manufacturer does not accept the plaintiff's framing of the issue and presents evidence that the plaintiff's comparative fault in the initial collision was a proximate cause of the so-called "enhanced injuries," is the manufacturer entitled to present evidence of the plaintiff's comparative fault? I would say yes. It is for this reason I would caution courts from reading today's result too broadly. I would limit the holding to true crashworthiness cases where it is established as a matter of law that the

---

5. I concur without reservation as to Question 2 concerning the purported "public policy bar."

plaintiff's comparative fault was not a proximate cause of the "enhanced injuries."