**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 17-2131**

_____

CRYSTAL L. WICKERSHAM; CRYSTAL L. WICKERSHAM, as Personal Representative of the Estate of John Harley Wickersham, Jr.,

Plaintiffs - Appellees,

v.

FORD MOTOR COMPANY,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of South Carolina, at Beaufort.  David C. Norton, District Judge.  (9:13-cv-01192-DCN; 9:14-cv-00459-DCN)

_____

Argued:  May 8, 2018                                    Decided:  June 14, 2018

_____

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

_____

Unpublished Order of Certification of a question of law to the Supreme Court of South Carolina.  Judge Floyd wrote the order in which Judge Niemeyer and Judge Motz joined.

_____

**ARGUED:** Adam Howard Charnes, KILPATRICK TOWNSEND & STOCKTON LLP, Winston-Salem, North Carolina, for Appellant. Kathleen Chewning Barnes, BARNES LAW FIRM, LLC, Hampton, South Carolina, for Appellees. **ON BRIEF:** Carmelo B. Sammataro, TURNER, PADGET, GRAHAM & LANEY, P.A., Columbia, South Carolina; Thurston H. Webb, KILPATRICK TOWNSEND & STOCKTON LLP, Winston-Salem, North Carolina, for Appellant.  Ronnie L. Crosby, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, Hampton, South Carolina, for Appellees.

_____

—————————————

O R D E R
—————————————

FLOYD, Circuit Judge:

Pursuant to Rule 244 of the South Carolina Appellate Court Rules, we respectfully

certify the following questions of law to the Supreme Court of South Carolina:

1. Does South Carolina recognize an "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain for wrongful death claims? If so, what is the plaintiff required to prove is foreseeable to satisfy causation under this exception—any injury, the uncontrollable impulse, or the suicide?

2. Does comparative negligence in causing enhanced injuries apply in a crashworthiness case when the plaintiff alleges claims of strict liability and breach of warranty and is seeking damages related only to the plaintiff's enhanced injuries?

We acknowledge that the Supreme Court of South Carolina may restate these

questions. As we explain, we believe that no controlling South Carolina authority

directly answers either question. Moreover, the answers will determine whether the

district court properly concluded that the uncontrollable impulse exception applied to the

plaintiff's wrongful death claim, and whether the district court properly denied the

defendant's motion to alter or amend the judgment based on the jury's finding of the

plaintiff's comparative negligence. Consequently, each answer will be determinative of

this appeal.

I.

This case stems from negligence, strict liability, and breach of warranty claims

filed under South Carolina law by John Wickersham's estate and wife against Ford Motor

2

Company, asserting that the airbag system in Wickersham's Ford Escape was defective and seeking to hold Ford liable for the injuries from the accident and his subsequent suicide. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332 based upon complete diversity of citizenship between the parties and damages alleged to be greater than $75,000.

Wickersham was a pharmacist who had long suffered from mental illness, including suicidal ideation. On February 3, 2011, during a rain storm, Wickersham drove straight through a T-intersection going forty-two miles per hour, hit a ten-inch curb and went airborne, and crashed his 2010 Ford Escape into a tree forty-five feet from the road. He suffered significant facial injuries during the accident, which led to several surgeries and to him losing his left eye, sense of smell, and ability to chew food.

After the accident, he struggled with pain management, despite many visits to pain specialists, surgeons, and doctors to try to manage his pain. He also continued to suffer from depression and was voluntarily hospitalized for severe depression and suicidal ideation on April 6, 2012. On June 19, he began receiving nerve treatments to alleviate his pain at a pain clinic at Emory University, but had to cease treatments when his insurance expired, as he was unable to pay the out-of-pocket costs. Although Wickersham had struggled to maintain a full-time job since 2010, before the accident, he did not return to full-time work after the accident, in part because he could not be on pain medication while working as a pharmacist, which put a financial strain on his family. Nearly eighteen months after the accident, on July 21, 2012, Wickersham committed suicide by ingesting a lethal dose of methadone pills.

His wife and his estate (collectively, "Wickersham") each filed negligence, strict liability, breach of express warranty, and breach of the implied warranty of merchantability claims against Ford Motor Company in the South Carolina Court of Common Pleas, claiming the airbag system was defective and seeking to hold Ford liable for Wickersham's injuries in the accident and his suicide. This was a crashworthiness case, in which an automobile manufacturer may be held liable for enhanced injuries caused by a defective product, even if the defective product was not responsible for the accident itself. *Donze v. Gen. Motors, LLC*, 800 S.E.2d 479, 480–81 (S.C. 2017); *see also Jimenez v. Chrysler Corp.*, 74 F. Supp. 2d 548, 565 (D.S.C. 1999), *rev'd in part & vacated in part on other grounds sub nom. Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439 (4th Cir. 2001) ("The [crashworthiness] doctrine applies if a design defect, not causally connected to the collision, results in injuries greater than those that would have resulted were there no design defect." (citation omitted)). Mrs. Wickersham sought damages for loss of companionship, and the estate sought damages for wrongful death, pain and suffering, lost wages, and medical bills. Ford removed both cases to the United States District Court for the District of South Carolina pursuant to diversity jurisdiction under 28 U.S.C. § 1332. The cases were tried simultaneously, but not consolidated.

Ford moved for summary judgment and primarily argued that the wrongful death claim could not survive under South Carolina law because Wickersham's suicide was an intervening act that could not be proximately caused by an airbag defect. The district court denied Ford's motion, holding that Wickersham could prevail on the wrongful death claim if he proved that Ford's actions led him to take his life due to an

4

"uncontrollable impulse"—an exception to the general rule that suicide breaks the causal chain in wrongful death claims. Essentially, the district court held that Wickersham could prevail if the injuries sustained in the accident as a result of the defective airbag caused chronic pain that led to an uncontrollable impulse to commit suicide. Ford renewed this motion again during and after trial, both of which the district court denied.

During the two-week trial, Wickersham asserted that the defective airbag caused his severe facial injuries, and that if the airbag had either not deployed in this crash or if it had not deployed so late, he would not have suffered these injuries. Ford argued that Wickersham's injuries were caused by the gearshift lever, rather than the airbag, impacting the left side of his face, arguing that he was out of position and leaning over the passenger seat when his vehicle struck the tree and when the airbag deployed.

The jury returned a verdict for Wickersham and found that the airbag was defective and was a proximate cause of Wickersham's injuries and suicide, and that Ford was liable for strict liability, negligence, and breach of warranty. Additionally, the jury found that Wickersham was thirty percent at fault for his injuries based on his misuse of the restraint system. After being instructed not to reduce any damages awarded based on the fault attribution, the jury awarded $4.65 million total to Wickersham—$1.9 million for the personal injury claims and $2.75 million for the wrongful death claim. The district court entered judgment for Wickersham in accordance with the jury verdict, and declined Ford's request to reduce the damages based on the finding of comparative negligence. Ford then moved to alter or amend the judgment, for judgment as a matter of law, and for a new trial, all of which the district court denied.

As relevant to this certification order, Ford appealed the district court's denial of its motion for judgment as a matter of law as to the wrongful death claim, and also asserted that the district court committed reversible error in instructing the jury on proximate cause for the wrongful death claim. It argued that the district court erred in applying the "uncontrollable impulse" exception because South Carolina courts do not recognize this exception to the general rule that suicide breaks the casual chain in wrongful death claims, or alternatively that it does not recognize the exception as the district court applied it. Ford also appealed the district court's denial of its Rule 59(e) motion to alter or amend the judgment based on the jury's finding that Wickersham was thirty percent at fault for his injuries, arguing that South Carolina law permits comparative negligence as a defense in strict liability and breach of warranty claims under these facts. As we explain below, we believe South Carolina courts have not answered either question, and each answer is determinative of this appeal.

## II.

### A.

We have certified the first question because South Carolina courts have never applied the "uncontrollable impulse" exception that the district court applied in this case to the wrongful death claim, and whether such an exception is recognized under South Carolina law is determinative of this claim.

Ford argues that the district court erred in denying its Rule 50(b) motion for judgment as a matter of law as to the wrongful death claim because the district court

6

applied the wrong standard to determine whether Ford's conduct proximately caused Wickersham's suicide, and because applying the correct standard, Ford cannot be held liable for Wickersham's suicide. Ford similarly argues that the district court committed reversible error in instructing the jury on proximate cause for the wrongful death claim. The issue here, with both arguments, is whether South Carolina recognizes an "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain in wrongful death claims, and if so, whether the district court correctly applied that exception.

This issue is determinative in this case because the district court recognized and instructed the jury on the exception, and the jury found Ford liable under the wrongful death claim based on this exception. Thus, if South Carolina does not recognize the exception, or does not recognize the exception the way the district court applied it, we will vacate and remand the wrongful death claim for reconsideration under the proper standard. Otherwise, we will affirm on this claim.

To prevail on a wrongful death claim under South Carolina law, a plaintiff must prove that the product defect proximately caused the suicide. *See* S.C. Code § 15-51-10 (stating that a civil action for a wrongful death claim requires that "the death of a person [was] caused by the wrongful act, neglect or default of another"). Ordinarily, establishing proximate cause requires proof of (1) causation-in-fact, and (2) legal cause, which is proved by establishing foreseeability. *Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006). "[F]oreseeability is considered the touchstone of proximate cause, and it is determined by looking to the natural and probable consequences of the

7

defendant's act or omission. However, while foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, the plaintiff need not prove that the defendant should have contemplated *the particular event* which occurred." *Id.* (emphasis in original) (citations & internal quotation marks omitted).

As both parties and the district court recognized, the general rule is that suicide is an intervening act that breaks the chain of causation in wrongful death actions and precludes recovery. *See, e.g.*, *Scott v. Greenville Pharmacy*, 48 S.E.2d 324, 328 (S.C. 1948) (rejecting a wrongful death claim against a pharmacy because suicide was not a foreseeable consequence of providing the customer with barbiturates); Civil Liability for Death by Suicide, 11 A.L.R.2d 751, § 2[b] (1950) ("Where an action is brought under a wrongful death statute the general rule is that suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render defendant civilly liable.").

In applying this general rule, courts typically conclude that suicide is not a foreseeable consequence of a defendant's action. As the Supreme Court of South Carolina observed, "so many elements may enter into a suicide that it is impossible to say that it was the natural and probable consequence of [defendant's action]," and that reaching such a conclusion would require the court "to eliminate entirely all those elements of feeling, temperament, disposition, emotional disorders, background and lack of self-control, which might of themselves have been sufficient to bring about the tragic result . . . ." *Scott*, 48 S.E.2d at 328; *see also Crolley v. Hutchins*, 387 S.E.2d 716, 717–18 (S.C. Ct. App. 1989) (affirming grant of summary judgment concluding that a

8

bartender's negligence in serving an intoxicated patron alcohol in violation of state law did not proximately cause the patron's attempted suicide because "[o]ne does not expect a person to attempt suicide as a natural and probable result of being served a drink while intoxicated").

Here, the district court purported to apply the "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain. Under this exception, the district court stated that "the court will simply look to whether the decedent had the ability to control his conduct, and if not, whether his uncontrollable impulse was proximately caused by the defendant's negligence." J.A. 185; *see also* J.A. 556 (instructing the jury that "a plaintiff may recover for the wrongful death when the defendant's actions made the person incapable of controlling his or her own actions"); J.A. 366 (asking the jury whether Wickersham proved "that the Defendant's wrongful conduct was a proximate cause of [his] uncontrollable impulse to commit suicide").

However, we cannot find any South Carolina case directly applying an "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain in wrongful death claims, and, moreover, there is no controlling precedent to indicate whether South Carolina recognizes this exception. The District of South Carolina recognized as much in *Watson v. Adams* when it stated that "[a]s far as the Court can tell, South Carolina Courts have never permitted a recovery on [the] basis" of the uncontrollable impulse exception. No. 4:12-cv-03436-BHH, 2015 WL 1486869, at *6, *8 (D.S.C. Mar. 31, 2015) (expressly recognizing that the uncontrollable impulse exception exists in some jurisdictions and stating that there was an "absence of evidence"

9

that an uncontrollable impulse exception applied, but not citing any South Carolina cases in providing the rule for this exception).

*Scott v. Greenville Pharmacy*, however, arguably indicates that such an exception exists under South Carolina law, but does not answer the related and also determinative question of what must be foreseeable under the exception in order for causation to be satisfied. 48 S.E.2d at 325–28. In *Scott*, the plaintiff-executrix brought a wrongful death action against a pharmacy that sold the decedent barbiturates without a prescription (in violation of state law), alleging that the sale of the habit-forming drug proximately caused the decedent's suicide. *Id.* at 325. The *Scott* court held that based on the complaint it could not hold "that the unlawful sale of the barbiturate capsules brought about a condition of suicidal mania as the natural and probable consequence of the sale, or that this result should have been reasonably foreseen by the respondent." *Id.* at 328; *see also id.* (stating that it may have been reasonably foreseeable that the decedent would become a drug addict, but not that he would kill himself because "a vast majority of the people" who use barbiturates do not commit suicide).

Although we think the *Scott* court merely rephrased the standard proximate cause requirement for a wrongful death claim that the harm must be a foreseeable consequence of the defendant's actions, we recognize that its "condition of suicidal mania" language arguably indicates that South Carolina courts may recognize an uncontrollable impulse exception to the general rule. *See id.* However, even if that is true, what must be foreseeable under this exception remains unclear: does foreseeing "the condition of

suicidal mania" require foreseeing an uncontrollable impulse *to commit suicide*, just the uncontrollable impulse, or *any* condition or injury?

Wickersham also argues that part of the *Scott* court's explanation of the "last clear chance" rule can be interpreted as recognizing the uncontrollable impulse exception. The *Scott* court stated:

> In many cases involving the issue under consideration, the doctrine of "the last clear chance" is invoked. This principle is stated in 2 Restatement of the Law of Torts, pp. 1257, 1258, Sec. 480:
>
> "A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff".
>
> This is sound law. *Seay v. Southern Railway-Carolina Division*, 205 S.C. 162, 31 S.E.2d 133 [(1944)]. But the allegations of the complaint, on the most liberal construction, fall far short of presenting the case of one who was no longer a free agent incapable of controlling his own conduct, and bent upon suicide. Nor, even if this had been alleged, is there any averment that respondent knew of any such condition.

*Id.* at 327–28. We acknowledge that an uncontrollable impulse exception could resemble this description of the "last clear chance" rule, in that a plaintiff can be "incapable of controlling his own conduct, and bent upon suicide." *See id.*[*] However, this potential

---

[*] We recognize that the "last clear chance" rule has been subsumed into South Carolina's consideration of comparative negligence, and is no longer sound law as a standalone doctrine. *See Spahn v. Town of Port Royal*, 499 S.E.2d 205, 206–07 (S.C. 1998) (overruling *Seay*, 31 S.E.2d 133). We leave it to the Supreme Court of South Carolina to determine whether this change in the last clear chance rule itself impacts

description of an uncontrollable impulse exception also fails to describe what action must be foreseeable in order for a plaintiff to succeed on a claim. In sum, it is unclear whether *Scott* recognizes an uncontrollable impulse exception at all, and if it does, it is unclear what is required to satisfy the exception.

Therefore, we believe these facts raise a question of South Carolina law for which there is no controlling precedent and insufficient guidance for us to dispose of this question. Additionally, the answer to this question will control whether the district court erred in applying the uncontrollable impulse exception to Wickersham's wrongful death claim. Consequently, we have certified this question regarding this determinative issue to the Supreme Court of South Carolina.

B.

We have certified the second question because the Supreme Court of South Carolina's recent decision in *Donze v. General Motors, LLC*, 800 S.E.2d 479, left open the question of whether comparative negligence is a defense to strict liability and breach of warranty claims in crashworthiness cases when the negligence relates to misuse of the product rather than causation of the accident, and the answer to this question determines whether the jury award should have been reduced.

Ford argues that the district court erred in denying its motion to alter or amend the judgment under Rule 59(e) because the jury found that Wickersham was thirty percent at

---

whether the description of the rule in *Scott* can nevertheless be interpreted as recognizing an uncontrollable impulse exception in wrongful death claims.

12

fault for proximately causing his own injuries based on his misuse of the restraint system by being out of position at the time of the crash and when the airbag deployed, and that such failure to reduce the jury award was a clear error of law which, if not corrected, will impose a manifest injustice on Ford. *See Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (stating that Federal Rule of Civil Procedure 59(e) allows the court to alter or amend a judgment within twenty-eight days of its entry "to correct a clear error of law or prevent manifest injustice" (internal quotation marks omitted)). Wickersham argues that South Carolina law does not recognize comparative negligence as a defense in crashworthiness claims under any cause of action when the product defect caused enhanced injuries.

The answer to this certified question is determinative in this case. If comparative negligence is a defense to strict liability and breach of warranty claims in crashworthiness cases, then the district court erred in denying Ford's motion to alter or amend the jury award. If it is not a defense, then the district court did not err, as the parties seem to agree that the entire jury award was recoverable under the strict liability or breach of warranty claims.

The United States District Court for the District of South Carolina recently certified a related question to the Supreme Court of South Carolina. The certified question asked: "Does comparative negligence in causing an accident apply in a crashworthiness case when the plaintiff alleges claims of strict liability and breach of warranty and is seeking damages related only to the plaintiff's enhanced injuries?" *Donze*, 800 S.E.2d at 480. The court responded that comparative negligence is not a

13

defense in this scenario. *Id.* at 481. We submit that the court's response in *Donze*, however, does not answer the question of South Carolina law before us.

First, the *Donze* court expressly narrowed its holding to when the plaintiff's negligence contributed to the *cause* of the accident. *Id.* at 485 n.4 ("Our ruling today is limited to the certified questions before us which concern only the applicability of comparative negligence to a plaintiff in causing the collision in a crashworthiness case."). Here, conversely, Wickersham's negligence contributed only to his enhanced injuries, not the cause of the accident. Thus, the holding from *Donze*, by its own terms, does not extend to the factual scenario presently before the Court. *See id.* at 481 (agreeing that "the enhanced injuries are a subsequent and separate event" from the initial collision).

Moreover, the *Donze* court opined that another factual scenario may exist in which comparative negligence *could* be a defense in a crashworthiness case, and we submit that we are faced with the kind of factual scenario the *Donze* court imagined. The *Donze* court stated that "[c]omparative negligence related to the [defective component] itself—tying [a door] shut for example—could still be a defense, if a factual basis existed . . . ." *Id.* at 485 n.4 (alterations in original) (quoting *Jimenez*, 74 F. Supp. 2d at 566 n.11). Here, the jury found that Wickersham negligently used the restraint system by being out of position at the time of the crash and when his airbag deployed, contributing to the enhanced injuries caused by the airbag. We submit that the negligent use of the restraint system relates to the defective airbag, specifically (as the airbag is part of the restraint system), and to the defective vehicle, generally, invoking the factual scenario described in *Donze*. In other words, the *Donze* court expressly left open the question of

14

whether comparative negligence could be a defense to a crashworthiness claim, when, as here, the plaintiff's comparative negligence contributed to the enhanced injuries rather than the accident itself.

Finally, the *Donze* court's decision can be read to support either side in this case and consequently does not provide sufficient guidance for us to dispose of this question. One the one hand, the *Donze* court reasoned that defenses to strict liability and breach of warranty claims are statutory constructs, and because the South Carolina legislature has not mandated application of comparative negligence principles either in crashworthiness cases, specifically, or in all personal injury actions, generally, the court declined to permit comparative negligence in causing an accident as a defense. *Id.* at 482, 485 (citing S.C. Code Ann. §§ 15-73-10, -20 (2005); §§ 36-2-314, -711 (2003)) (distinguishing South Carolina from the majority of states that permit a comparative negligence analysis in crashworthiness cases based on state statutes or case law permitting the analysis). From the *Donze* court's reliance on the South Carolina statutory scheme, we might infer that South Carolina courts are more likely to again decline to permit a comparative negligence defense under our facts.

On the other hand, however, in announcing its holding, the *Donze* court expressly "adopt[ed] the rationale established by the district court in *Jimenez*," *id.* at 485, and the *Jimenez* court focused on the crashworthiness doctrine itself rather than South Carolina statutes, *see* 74 F. Supp. 2d at 565–66, which leads us to a different conclusion about the outcome of this question. The crashworthiness doctrine only holds manufacturers liable for the plaintiff's enhanced injuries, or the injuries greater than those that would have

15

resulted were there no design defect, creating an inherent separation between causation and enhanced injuries in crashworthiness claims. *See id.* at 565; *Mickle v. Blackmon*, 166 S.E.2d 173, 187 (S.C. 1969). Both the *Jimenez* court and the *Donze* court focused on this inherent separation in reaching their conclusion that any comparative negligence in causing an accident is irrelevant to a crashworthiness claim under South Carolina law. *Jimenez*, 74 F. Supp. 2d at 565–66 ("[T]he concept of 'enhanced injury' effectively apportions fault and damages on a comparative basis; defendant is liable *only for the increased injury caused by its own conduct*, not for the injury resulting from the crash itself. Further, the alleged negligence causing the collision is legally remote from, and thus not the legal cause of, the enhanced injury caused by a defective part . . . ." (emphasis added)); *Donze*, 800 S.E.2d at 481 ("[T]he enhanced injuries are a subsequent and separate event, the *sole* cause of which is the manufacturer's defective design" and, "[t]herefore, any negligence on the part of the plaintiff in causing the *initial* collision is irrelevant." (emphases in original)); *id.* at 485 ("[T]he doctrine of crashworthiness itself divides and allocates fault to a manufacturer for damages *it alone* caused . . . ." (emphasis added)).

Here, conversely, application of the crashworthiness doctrine arguably better supports permitting the defense. Holding the manufacturer responsible "only for the increased injury caused by its own conduct," *Jimenez*, 74 F. Supp. 2d at 566, would require permitting a comparative negligence defense to reduce the judgment for the enhanced injuries caused by the plaintiff's conduct. Otherwise, the court would be permitting manufacturers to be held liable for damages that the *plaintiff* caused. *See*

16

*Donze*, 800 S.E.2d at 485. In sum, the two prongs of the court's analysis in *Donze* arguably lead us to two different conclusions on the determinative issue of whether South Carolina permits comparative negligence based only on the plaintiff's enhanced injuries as a defense in strict liability and breach of warranty claims in crashworthiness cases.

Thus, we believe these facts raise a novel question of South Carolina law, and we find ourselves unable to predict with confidence how the Supreme Court of South Carolina would rule on this question. Consequently, we have certified this question regarding this determinative issue to the Supreme Court of South Carolina.

## III.

For the aforementioned reasons, we respectfully request that the Supreme Court of South Carolina accept and answer the foregoing certified questions, thereby providing the parties, the courts, future litigants, and the public with definitive guidance on these issues.

We direct the Clerk of Court to forward a copy of this order under official seal to the Supreme Court of South Carolina.

QUESTIONS CERTIFIED